## HENRY TORBUSH vs. CITY OF NORWICH.

A municipal corporation is not liable for damages caused by the acts of a voluntary association of firemen, enrolled and organized according to the charter and by-laws of such corporation, while engaged in extinguishing a fire within the corporate limits.

TRESPASS and trespass on the case, for injury to the plaintiff's property by the alleged negligence and misconduct of firemen of the defendant, while engaged in extinguishing a fire; brought to the Superior Court for New London county, and tried to the court on the general issue. The court (*Seymour, J.*) found the facts and reserved the case for advice. The case is sufficiently stated in the opinion.

*A. F. Park* and *Lucas*, for the plaintiff.

The defence relied on is that the firemen, although they were organized, officered, and summoned there by the defendants, and were acting under their control and direction when they damaged the plaintiff, yet were not such servants or agents of the city that the maxim *respondeat superior* applies, because in the performance of a public duty. The service of the firemen of the city of Norwich, in extinguishing fires at the call of the city, is not, legally speaking, a public duty. A public duty is one imposed by law as a burden, and in which the public have a common interest, that is, it is a governmental duty. And every other duty of the city is a private duty, in regard to which the city is liable as a legal individual. The work of extinguishing fires is not an obligation imposed upon the city by legislative authority, exclusively for public purposes, and without its corporate assent, but a work voluntarily assumed by the city. In this instance it was a voluntary, positive exercise by the city of an accepted permissive authority, for which they are liable. *Child* v. *City of Boston*, 4 Allen, 41; *Jones* v. *City of New Haven*, 34 Conn., 1; *Eastman* v. *Meredith*, 36 N. H., 284, and cases cited; *Russell* v. *Mayor &c. of New York*, 2 Denio, 461; *American*

*Print Works* v. *Lawrence*, 1 Zabr., 248 ; *Hale* v. *Lawrence*, id., 714; *Mayor &c. of New York* v. *Lord*, 18 Wend., 126.

There is no reported case in which it is held that the service of firemen is a public duty, nor do the principles which underlie public duty, as they are gleaned from adjudged cases or from elementary books, afford ground for holding it a public duty. Nor is there any statute of the state that imposes upon all cities and boroughs alike the duty of organizing and maintaining one or more fire companies, according to their populations.

But this court is asked by the defendants to place in the schedule of public duties a service originated by themselves, entirely distinct in principle and character from those now adjudged to be public duties; and to do this by a total disregard of the well established rules of law defining what a public duty is, a thing suitable only to be done by a legislative body. If the firemen of the defendants had been engaged in a public duty, (of which the service of firemen has not a single element,) yet the facts of this case are such that even then the city would be liable. *Jones* v. *City of New Haven*, 34 Conn., 14 ; *Weightman* v. *Corporation of Washington*, 1 Black, 39 ; *Nebraska City* v. *Campbell*, 2 id., 590.

The defendants in common justice ought to pay the damage suffered by the plaintiff, by reason of their negligence in not using any care to protect the plaintiff's premises and property from depredation while in their actual use and occupation, as found by the court. When the agents appointed by the city break open my house in my absence, and use it in doing the work the city called them there to do, and while so engaged therein they suffer it to be rifled by the crowd, it is simply just that the city should make good my loss.

The right claimed by the defendants and relied on as a defence, to appropriate and destroy the plaintiff's property as a matter of convenience, (there being no pretence that his property was a nuisance,) and that the plaintiff is without redress, is the same right exercised by semi-barbarous, monarchial tyrants. But in this state one of the fundamental principles of the organic law is that private property shall not be taken, except

for public use, and then not without compensation.    The sovereign power of this state or of the United States has not the right or the power to appropriate and destroy, under such circumstances, a man's property at their convenience merely. The doctrine is at war with every man's sense of natural justice.

*Halsey* and *Pratt*, for the defendants, cited *Hafford* v. *City of New Bedford*, 16 Gray, 297 ; *O'Meara* v. *Mayor &c. of New York*, 1 Daly, 425 ; *Martin* v. *Mayor &c. of Brooklyn*, 1 Hill, 545 ; *Bailey* v. *Mayor &c. of New York*, 3 id., 531 ; *Buttrick* v. *City of Lowell*, 1 Allen, 172 ; *Mitchell* v. *City of Rockland*, 52 Maine, 118 ; *Russell* v. *Mayor &c. of New York*, 2 Denio, 461 ; *Church* v. *Mansfield*, 20 Conn., 284 ; *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 id., 51.

FOSTER, J.    The liability of a city corporation for the acts of the members of its fire department while engaged in extinguishing fires within the corporate limits, was fully considered by us in the recent case of *Jewett* v. *City of New Haven.*  We deem it quite unnecessary to recapitulate the views there expressed ; we merely refer to them as furnishing satisfactory reasons why the claim of the plaintiff in this action cannot be sustained.

A prominent feature in the organization of the fire department of this city, and which distinguishes it from that of many other cities, is that it is strictly a voluntary association. Each company elects its own members and its own officers. All the action taken by the city is to ratify the doings of the companies, and to accept their services as firemen, through the court of common council.

On the night of the 14th of February, 1869, an alarming fire broke out near the plaintiff's premises.  The property of the plaintiff was in so much peril, one building only, called the Apollo, intervening between it and the fire, that the plaintiff and his family removed a large portion of his furniture and effects from his house to a place of safety.   The fire extended to and consumed the Apollo building during the night,

leaving nothing but the party wall between the fire and the house of the plaintiff. The Apollo building extended a number of feet in the rear beyond the plaintiff's house, and the firemen thought it needful to pass on to the veranda in the rear of the plaintiff's house, in order to throw water from that point into the windows of the Apollo building. The case finds that the fire at this time was gotten under such control that it was supposed the party wall would arrest the flames, and that there was no necessity for entering the plaintiff's house to secure its safety. But it is also found that it was quite convenient to carry the man-pipes of one or more of the engines on to the veranda; and thence to throw water into the windows of the Apollo. Acting in good faith, the firemen forced open the plaintiff's door, having first rung the bell which was not answered, took with them first the hose of one engine, and then that of another, and so from the veranda threw water into the windows of the burnt and burning building. The hose were wet, and the feet of the firemen were wet and muddy, and in passing through the house considerable damage was necessarily done to the floors, carpets, and furniture of the plaintiff. It is for the damage thus done, that the plaintiff rests the first of his three several claims on which to recover.

We think the defendants are not liable for this trespass, if trespass it should be called. The persons committing it were volunteer firemen, but in no legal sense such agents or servants of the defendants as to make them responsible as principals. Under the circumstances we cannot say that these men were culpable. The fire was partially under control, but it was still burning, and this veranda was a place quite convenient for throwing water advantageously upon it. Obviously it was a case where it was wiser and safer to err by excess, rather than by defect. Suppose the act complained of had not been committed, and no water had been thrown on the fire from this point. A sudden gust of wind might have enveloped the plaintiff's house in flames, and destroyed everything combustible within it in less than a single hour.

We pass to the next ground of the plaintiff's claim. While

the firemen were engaged in thus extinguishing this fire, a portion of the walls of the Apollo building fell, crushed the veranda, and partially buried two firemen in the ruins. One was so fastened that he was unable to help himself, and one of the man-pipes was playing a full volume of water into his face. Another fireman, seeing the peril of his comrade, cut the hose and thus relieved him till he was extricated. But the hose thus cut emptied its contents on the plaintiff's floors, covering them with water several inches deep, thus doing much damage. The plaintiff did not claim that cutting the hose under such circumstances was a negligent or improper act, but he claimed that the hose was improperly and unlawfully in his house, and that being so, the defendants were responsible for the consequences.

We have already said that the defendants are not liable for passing the hose through the plaintiff's house, and of course they are not liable for the subsequent act of cutting it. That was a mere act of humanity, imperatively demanded by the occasion, to relieve a fellow being from imminent peril.

The remaining ground of claim is for property lost or stolen from the house during the fire. The outer door was necessarily left open, as it could not be closed after the hose was passed through to the rear. No one was placed to guard the door to prevent the crowd from entering, though ordinary prudence required it. The crowd did enter, rummaged the house, and carried off many articles of property. Many policemen of the city were in attendance at the fire, actively engaged in protecting property in other localities, and, for aught that appears, all were employed where their services were needed. While we truly regret the misfortunes of the plaintiff, we cannot say that the defendants are responsible for his losses. We think the law is not so as to fix on them the liability, either for the acts done or omitted of which complaint is made. Organized society brings with it many and great blessings, but it has also its evils—its inevitable evils. No system of laws yet known is so perfect, no administration of laws by human hands has yet attained such a degree of perfection, as to make exact and equal distribution

of the blessings and burdens incident to the social state. It is a familiar maxim that the law knows no wrong without a remedy, but it certainly does know cases of individual hardship, without adequate means of redress. It is a maxim of the law of England that Parliament can do no wrong. But Lord Holt said, " it could do several things that look pretty odd."

The Superior Court is advised to render judgment for the defendants.

In this opinion SEYMOUR and PHELPS, Js. concurred.

BUTLER, C. J. In the indorsement which the opinion of Judge FOSTER contains of the views of a majority of the court in *Jewett* v. *New Haven* I do not concur. My reasons for such dissent are fully given in that case.

But I concur in the result here, first, because the *firemen* were *volunteers*, and not the servants of the city of Norwich; and second, because the *police* were engaged in the performance of a public, *governmental* duty, and their negligence is not imputable to the city. This case is every way distinguishable from *Jewett* v. *New Haven.*

CARPENTER, J. I concur with the Chief Justice.