EDGERLY *v.* CONCORD.

A municipal corporation, possessed of a system of water-works constructed under a legislative charter for supplying water to the inhabitants and for extinguishing fires, and under the exclusive control of a water commissioner, with hydrants under the control of the public fire department, is not liable in the absence of a statute giving the remedy for an injury, to a person travelling upon the street, caused by his horse taking fright at a stream of water thrown from a hydrant by firemen who are testing the capacity of the hydrant by request of the mayor of the corporation, in presence of the mayor and city councils, who are engaged in determining the most suitable location for the erection of an engine-house for a steam fire engine.

CASE, for injury from the plaintiff's horse taking fright at a stream of water thrown from a hose attached to one of the defendants' public hydrants. In acting upon a petition for the location and construction of an engine-house, in which to keep a steam fire engine, in an elevated part of the city, the mayor and city councils were present and witnessed an exhibition of water thrown through hose attached to a hydrant, for the purpose of ascertaining the capacity of the hydrant and the force of the water there. The horse of the plaintiff, who was riding upon the street, near the place of the exhibition, took fright at the stream of water, and the plaintiff was thrown from the carriage and injured. The chief-engineer of the fire department, with two firemen acting under his direction, made the exhibition at the request of the mayor. Concord is supplied with water by an aqueduct constructed under a legislative charter. Tolls are exacted from the inhabitants using the water, and the aqueduct is under the control of a water commissioner provided for by the charter and appointed by the city. The hydrants are designed for use in extinguishing fires, and are under the control of the fire department. The defendants deny their liability.

*W. L. Foster, J. Y. Mugridge,* and *J. H. George,* for the plaintiff. "The administration of all the fiscal, prudential, and municipal affairs of the city" is vested in the city council, composed

of the mayor, a board of aldermen, and a board of common council. A majority of each board constitutes a quorum for the transaction of business.   Laws 1849, *c.* 835, *s.* 2 ; Gen. St., *c.* 40, *s.* 3.

"All the powers now vested by law in the town of Concord, or in the inhabitants thereof, as a municipal corporation, shall be vested in the city council."   Laws 1849, *c.* 835, *s.* 14.   By the act of June 30, 1871 (Laws 1871, *c.* 69, *ss.* 1, 2), the city is authorized to construct, manage, maintain, and own suitable water-works, for the purpose of introducing into and distributing through the more compact parts of the city an adequate supply of water for extinguishing fires, and for the use of its citizens, and for other proper uses ; and by section 5 of the same chapter the city is authorized to contract with individuals or corporations to supply them with water, and to establish tolls and charge rents for the use of water.   The authority, therefore, under which the city manages its water-works, though for the accomplishment of an object of a public nature and for the benefit of the public, is also one from the exercise of which the municipal corporation derives a profit. The city councils were the legally constituted general agents of the city.   The chief-engineer and two members of the fire department were present by order of the mayor—" the chief executive officer of the city "—at the meeting of the city councils, convened in the street, and there, " by order of the mayor " and " under the direction of said city councils," an " exhibition was given of the capacity and force of the hydrant."

I.  The cause of action is not conferred by statute, but by force of the common law.  It is not founded upon the negligent perform-ance of a corporate duty, but upon a tort committed by its agents (whether in the performance of a corporate duty or privilege, or not, is immaterial), for the consequences of which it is liable, to the same extent and upon the same principle that any corporation or individual would be liable for doing similar acts.   And it can-not be relieved from liability upon the ground (if such position shall be assumed) that an ordinance of the city (Ordinances, *c.* 19, *s.* 10, *p.* 116) prohibited the use of or interference with any public hydrant except by some person authorized by the board of water commissioners or the proper officers of the fire department.   The " proper officers "—the chief-engineer and two members of the fire department—were present, and assisted in the commission of the tort complained of, the " city government " itself, *in propria persona,* directing and controlling the acts of the fire department. The careless act complained of was in law the act of the defend-ants.  *Respondeat superior* applies to a city, expressly authorizing the acts of its public officers.   *Woodcock* v. *Calais,* 66 Me. 234. The cause of action is founded upon the wrongful act of the de-fendants, causing a direct injury to the person of the plaintiff, independent of any connection with a public work.  *Hill v. Bos-ton,* 122 Mass. 358, and cases cited.   And the city is responsible,

because the act complained of was done under express authority
of the city government and in the attempt to obey its directions.
*Woodcock* v. *Calais, supra.* When officers of a town, acting
as its agents, do a tortious act with an honest view to obtain for
the public some lawful benefit or advantage, reason and justice
require that the town, in its corporate capacity, should be liable to
make good the damage sustained by an individual in consequence
of the acts thus done. The contrary doctrine would be injurious
to the person damaged and to the agents employed by the town.
It would also be injurious to the town, by paralyzing the energies
of such agents and officers, as they would be likely to refuse to act
when prompt action is important. *Hawks* v. *Charlemont*, 107
Mass. 414, 417.

II. The city is also responsible upon another consideration,
involving the application of another well settled principle of law.
The water-works are the property of the city, which is entitled to
profits derivable from them. The city has complete power to
regulate the distribution of water, and to determine for what pur-
poses, public or private, it may be used. Laws 1871, *c.* 69, *ss.* 1, 5.

Whether the water be used for ordinary domestic purposes or
for the extinguishment of fires, its use is for the benefit and advan-
tage of the city, not only in regard to its profits derivable from
tolls for water used for domestic purposes, and for the protection
and security of its public and private property and interests, but
the city, being authorized by section 6 of the act of 1871 to estab-
lish a water precinct, was also empowered to levy taxes upon the
inhabitants and property of the precinct; in pursuance of which
authority the board of water commissioners (established under the
authority of a city ordinance passed in 1871—Ordinances, ed. of
1878, *c.* XIX, *p.* 113) fixed a rate and toll of $50 per annum for each
public hydrant within and without the water precinct. See *Brown*
v. *Concord*, 56 N. H. 375. It is probably true that a city or town
is not liable for the negligences and tortious acts of public officers
(such as the members of a fire department), merely because the
city or town has appointed them to office and paid them for their
services, where such persons perform duties imposed by law for
the benefit of all the citizens, the performance of which is not con-
trolled by the city, and for which the city derives no benefit in its
corporate capacity. Such circumstances do not characterize the
present case, which is distinguishable from the cases governed by
the foregoing principle, by the fact that here the negligence was
committed in the management of water-works owned by the city,
and from the use of which it derives benefits and emoluments in
its corporate capacity.

The city of Providence owned water-works, derived by authority
of a state statute, received rents for water, and controlled its use
and distribution. In an action against the city for damages caused
by a stream of water thrown across a street from a hydrant, at

which the plaintiff's horse took fright, ran away, and received injuries, the stream being thrown by the employés of the water commissioners, it was held that the water commissioners and their employés were the servants of the city, and that the city was responsible for their acts. *Aldrich* v. *Tripp*, 11 R. I. 141. A municipal corporation was authorized to construct gas-works, and make and sell gas and coke, the surplus profits to go in reduction of water rates and for other municipal purposes. The plaintiff was injured by a careless workman employed in laying gas-pipes. It was held, that the town, being entitled to a profit from the works, was liable to indemnify the injured person. *Scott* v. *Mayor of Manchester*, 2 H. & N. 204, 210. The city of Pittsburgh was held liable for an injury resulting from a defect in a wharf, of which the city had exclusive control, and for the use of which it received wharfage. *Pittsburgh* v. *Grier*, 22 Pa. St. 54. The city of Worcester was the owner of a building used in part for municipal purposes, and rented in part for the emolument of the city. It was held liable for an injury resulting from a hole dug by a workman employed in repairing the building, and carelessly left unguarded. *Oliver* v. *Worcester*, 102 Mass. 489, 493, 500 ; *Thayer* v. *Boston*, 19 Pick. 511 ; *Worden* v. *New Bedford*, 131 Mass. 23 ; *Weightman* v. *Washington*, 1 Black 39, 50, 51. A municipal corporation. in its private character, as the owner of land and other property. is to be regarded in the same light as an individual, and dealt with accordingly.

The powers and rights conferred by the act of 1871, authorizing the construction of the water-works and their appurtenances, are not, strictly and legally speaking, conferred for the benefit of the public. The grant is a special, private franchise, made as well for the private emolument and advantage of the city as for the public good. The whole investment under the law, and the revenue and profits to be derived therefrom, are a part of the private property of the city,—as much so as the lands and houses belonging to it, situate within its corporate limits. The distinction between the case at bar, and those cases in which a town or city is exonerated because the powers conferred, concerning the exercise of which negligence is imputed, are granted exclusively for public purposes, and where the corporations may be said to have no private estate or interest in the grant, is a distinction clear and well settled ; and the process of separation is quite practicable. If the powers are granted for public purposes exclusively, they belong to the corporate body in its public, political, or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc*, is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred. *Bailey* v. *The Mayor, &c., of New York*, 3 Hill 531, 539—

*S. C.* (names reversed), 2 Den. 433. The distinction is very clearly pointed out in the exhaustive opinion of *Gray*, C. J., in *Hill* v. *Boston*, 122 Mass. 344, 345, 359. See, also, *Brooks* v. *Somerville*, 106 Mass. 271, 274 ; *Western Saving Fund Society* v. *Philadelphia*, 31 Pa. St. 185, 189 ; *Parnaby* v. *Lancaster Canal Co.*, 11 A. & E. 223 ; *Cowley* v. *Mayor, &c., of Sunderland*, 6 H. & N. 565 ; *Gibbs* v. *Liverpool Docks*, 3 H. & N. 164, 176, 177 ; *Sawyer* v. *Corse*, 17 Grat. 230, 241 ; *Mayor, &c., of New York* v. *Furze*, 3 Hill, N. Y., 612 ; *Rochester White Lead Co.* v. *Rochester*, 3 N. Y. 463 ; *Child* v. *Boston*, 4 Allen 41 ; *Lloyd* v. *The Mayor, &c., of New York*, 5 N. Y. 369 ; 2 Dill. Mun. Cor., ss. 764, 778, 779, 780 ; Camp. Neg., *ss.* 17–19 ; Shear. & Red. Neg., *s.* 120, where it is said a municipal corporation is liable to the same extent as an individual for any act done by the express authority of the corporation or of a branch of its government, empowered to act for it upon the subject to which the particular act relates ; and where it is also said (supporting the proposition by the citation of numerous English cases) that the distinction before alluded to is now repudiated, "and it is held that the fact that a public work may benefit the corporation, as such, by adding the tolls or charges for its use to the public treasury, cannot add to the reasons for its corporate liability for negligence in the management of that work. The corporation is liable for its negligence in the performance of a duty, whether it derives any advantage from the work or not."

III. Again : It is an established principle, that while there is no implied liability for damages necessarily occasioned by the construction of any municipal work or improvement authorized by law, yet, if the work thus authorized be not executed in a proper and skilful manner, there will be a common-law liability for all damages not necessarily incident to the work, · and which are chargeable to the unskilful or improper manner of executing it. The same principle applies, of course, to the management, operation, and use of a constructed work. 2 Dill. Mun. Cor. (3d ed.), *s.* 966 ; *Smith* v. *City Council*, 33 Grat. 208, 213 ; *Perry* v. *Worcester*, 6 Gray 544, 547 ; *Sprague* v. *Worcester*, 13 Gray 193, 195 ; *Ellis* v. *Iowa City*, 29 Iowa 229 ; *McGregor* v. *Boyle*, 34 Iowa 268 ; *Ring* v. *Cohoes*, 13 Hun 76, 84 ; *Joliet* v. *Seward*, 99 Ill. 267 ; *Brine* v. *Railway Co.*, 2 B. & S. 402, 411 ; *Mersey Docks* v. *Gibbs*, 11 H. L. Cas. 686, 713, 714.

*Sanborn & Clark*, for the defendants. I. The discharging of the water from the hydrant, which is claimed by the plaintiff to have been the cause of frightening her horse, whereby she received injuries and for which she claims compensation, was not the act of the city, nor was it done by its direction or under its orders.

The administration of all the fiscal, prudential, and municipal affairs of the city is vested in the city council, consisting of the mayor, board of aldermen, and board of common council. Laws

1849, c. 835, s. 2.   " All the powers vested by law in towns, or in the inhabitants thereof, shall be exercised by the city councils by concurrent vote." Gen. St., c. 44, s. 1.   No action whatever was taken by the city council with reference to testing the capacity of the hydrants at the time of their meeting on the premises, and no intimation given that such would be done, prior to their assembling, as is shown by the records in the case.   So that the act complained of was not done under the authority or direction of the city government.   That a majority of the city council were present and saw the water thrown cannot make the city liable. No one would claim, if an injury happened to an individual through the careless act of another in sight of the city government, or of every inhabitant of the city, that a liability on the part of the city would arise.   But the case finds, that, prior to the meeting " the mayor requested the chief-engineer of the fire department of the city to have present, at the meeting appointed, hose, apparatus, and men sufficient to test the capacity of the hydrants upon the 'hill,' so called, mentioned in said petition, in order to ascertain whether or not property there situated was adequately protected by such hydrants."   All the mayor's powers and duties depend entirely upon the provisions of the city charter, or general laws pertaining to cities, and valid by-laws passed in pursuance thereof.   The mayor had no authority or power to order the chief-engineer of the fire department to do what he requested of him, nor had he authority to interfere in any way with the hydrants, hose, and apparatus, or authorize their use, or to order firemen to any labor or to perform any service.

The Gen. Sts. provide that " any town may choose by major vote  . . .  firewards," and " shall appoint a chief-engineer and assistant engineers and clerk of the fire department, who shall respectively have the powers and perform the duties of the chief and other firewards and their clerk, and, as a board, shall have the powers and perform the duties of the board of firewards."   Gen. St., c. 37, s. 4 ; Gen. St., c. 96, s. 21.   The board of engineers thus appointed, the statute says, " shall have at all times the control of all fire-engines, fire-hooks, hose, and all other implements designed or used for the extinguishment of fire  . . .   and of all persons appointed to serve in any engine, hose, or axe company, or other association, whose duty it shall be to aid in extinguishing fires in all things appertaining to their appointment." Gen. St., c. 96, s. 2. The mayor's order or request was given to a public official over whom he had no control, requesting him to use the apparatus and men, which no one could lawfully do without leave of the board of engineers.   By an act of the legislature (Laws 1871, s. 69) the city of Concord was authorized to establish water-works in the city, for the purpose; among others, of introducing into and distributing through the more compact parts of the city an adequate supply of water for extinguishing fires ; and by s. 5 of said chapter the city

was authorized to place the management of such water-works under the direction of a superintendent, or board of water commissioners, or of both, with such powers and duties as might from time to time be prescribed by the city council. In accordance with this section of the law, the city placed the management and direction of the water-works in a board of water commissioners, giving them all the authorities, powers, and rights which the city had by virtue of said act of the legislature. Rev. Ordinances, *c.* 19, *ss.* 1, 3. By *s.* 10 of said chapter it was provided "no person except those duly authorized by the board of water commissioners, or the proper officers of the fire department, shall use or in any way interfere with any public hydrant within the city." This being the law, neither the city government nor the mayor had any right to interfere with the hydrant in question. The request of the mayor was wholly outside any powers he had as an officer or servant of the city, and the corporation cannot be held responsible for the unauthorized and unlawful acts of one of its officers, even though done *colore officii. Barbour* v. *Ellsworth,* 67 Me. 294; *Thayer* v. *Boston,* 19 Pick. 516; *Perley* v. *Georgetown,* 7 Gray 464; *Mayor* v. *Eschbach,* 18 Md. 276; *Cooper* v. *Athens,* 53 Ga. 638; *Chicago* v. *McGraw,* 75 Ill. 566; *Smith* v. *Rochester,* 76 N. Y. 506; *Hanvey* v. *Rochester,* 35 Barb. 177; *Haskell* v. *New Bedford,* 108 Mass. 208; *O'Meara* v. *Mayor,* 1 Daly 425.

II. The immediate cause of the injury is alleged to have been in the negligent, improper, and unlawful use and management of the hydrant, hose, and apparatus by the chief-engineer and two members of the fire department; and the question arises, Were they acting officially, in the line of their duties, or as individuals? If they were acting as individuals simply, and not as agents and servants of the city, of course no one can be liable but themselves for the results of their conduct. If they were acting officially, it must have been in the performance of some duty required of them by law. We find no provision of law which requires firewards or firemen to give exhibitions of the capacity and force of hydrants, or to test the fact whether one location or another is the better for the erection of steam fire-engine buildings. If such is their duty, then in the performance of it they are public officers, and the city is not liable for their negligence. In order to render the city responsible, it must appear that they were appointed and were removable by the corporation, not in any obedience to the statute, and subject to its control in the details of their particular work, and that they must have been acting within the scope of their authority, and within the power of the corporation itself, in the legitimate exercise of some duty of a corporate nature which was devolved upon them by law. Shear. & Red. Neg., 3d ed., *s.* 137; 2 Dill. Mun. Cor., 3d ed., *s.* 974, and cases cited.

The negligent acts complained of were done by the two firemen, who held their place by appointment of the engineers, who

were appointed by the city in obedience to the statute. The city had no power of removal of either engineers or firemen, and no control over the details of their particular work. The duties devolving upon the engineers and firemen were entirely statutory. They were officers charged with a public service, and in no way subject to the order of the city, or of any of its officials. Such being their status, are they the servants and agents of the corporation, so that the corporation must be held liable for their torts? Upon principle they ought not to be so considered, and, upon the authority of adjudicated cases, they are not.

The leading case in Massachusetts upon this point is *Hafford* v. *New Bedford*, 16 Gray 297, where it was decided that " a city is not liable for a personal injury occasioned by the negligence of the members, appointed and paid by the city council, of a fire department established by the city council, pursuant to an act of the legislature." The ground of the decision was placed upon the principle that the members of the fire department were not servants or agents in the employment of the city, but acted rather as officers charged with the performance of a public duty or service. *Fisher* v. *Boston*, 104 Mass. 87, is also a case directly in point; and, in the opinion, *Gray*, J., says, in speaking of fire officers,—" However appointed or elected, such persons are public officers, who perform duties imposed by law for the benefit of all the citizens, the performance of which the city or town has no control over, and derives no benefit from it, in its corporate capacity. The acts of such public officers are their own official acts, and not the acts of the municipal corporation or its agents."

To the same point are *Smith* v. *Rochester*, 76 N. Y. 506; *Morrison* v. *Lawrence*, 98 Mass. 219; *Jewett* v. *New Haven*, 38 Conn. 368; *Torbush* v. *Norwich*, 38 Conn. 225; *Wheeler* v. *Cincinnati*, 19 Ohio St. 19; *O'Meara* v. *Mayor*, 1 Daly 425; *Hayes* v. *Oshkosh*, 33 Wis. 314; *Howard* v. *San Francisco*, 51 Cal. 52; *Greenwood* v. *Louisville*, 13 Bush 226; *Heller* v. *Sedalia*, 53 Mo. 159; *Brinkmeyer* v. *Evansville*, 29 Ind. 187. Cities are not liable for a personal injury caused by the negligence or unlawful conduct of a collector of taxes—*Dunbar* v. *Boston*, 112 Mass. 75; an inspector of steam boilers—*Mead* v. *New Haven*, 40 Conn. 72; health officers—*Barbour* v. *Ellsworth*, 67 Me. 294; *Ogg* v. *Lansing*, 35 Iowa 495; *Brown* v. *Vinalhaven*, 65 Me. 402; police officers—*Buttrick* v. *Lowell*, 1 Allen 172; Dill. Mun. Cor., 3d ed., *s.* 975, and cases cited; surveyors of highways—*Ball* v. *Winchester*, 32 N. H. 436; *Hardy* v. *Keene*, 52 N. H. 370; *Walcott* v. *Swampscott*, 1 Allen 101; *Small* v. *Danville*, 51 Me. 359; constables—*Hurlburt* v. *Litchfield*, 1 Root 520; assessors—*Rossire* v. *Boston*, 4 Allen 57; commissioners of public charities—*Maxmilian* v. *Mayor*, 62 N. Y. 160.

III. The plaintiff claims, after allowing that the foregoing principle is probably true, that the city is liable, because the negligence was committed in the management of water-works owned

by the city, and from the use of which it derives benefits and emoluments in its corporate capacity. The corporation was not managing the water-works at the time the accident happened. The entire management and direction of the works was placed by law in a board of water commissioners, and they only had the right to operate the hydrant in question, except, possibly, by inference, the proper officers of the fire department had the same right in the legitimate performance of their duties. The mayor's request was without authority, beyond his lawful power, and made to an officer wholly independent of his orders. The city council can only prescribe the powers and duties of the water commissioners by by-law or ordinance. It has done nothing material in this case, but put the control and management of the works in the board of water commissioners. The commissioners never gave any authority or permission for the use of the hydrant that day to any one, nor were they ever consulted about it. In fact, they knew nothing about it. The firemen were not their agents or servants, nor in any way under their control. So far as the works related to the furnishing an adequate supply of water for extinguishing fires, they were to be constructed and maintained by the city for the benefit of the public, and without pecuniary compensation or emolument. *Gray*, C. J., in *Tainter* v. *Worcester*, 123 Mass. 316.

The water commissioners in 1874 fixed a rate and toll of $50 per annum for each public hydrant in the city, and the city council voted to raise by taxation $7,400—a sum sufficient to meet the amount of such tolls: a tax covering this sum was assessed, and committed to the collector for collection. Certain residents and tax-payers of the city brought a bill in equity complaining that the appropriation was unauthorized and illegal, and upon it the city was restrained from paying any part of the $7,400 for the purposes for which it was appropriated. It is clear that the city cannot contract with itself, nor establish tolls for the water consumed by itself. *Brown* v. *Concord*, 56 N. H. 375. So the city never has received benefits or emolument, in its corporate capacity, from the works, so far as their use for fire purposes is concerned, nor can it. The acts complained of were not done relative to the private character of the corporation, in the management of property or rights voluntarily held by the city for their own profit and advantage, but were done, if under authority, in the performance of a public duty.

*Aldrich* v. *Tripp*, 11 R. I. 141, cited by the plaintiff, is different from this case. There the employés of the water commissioners committed the negligent act, not in the performance of a strictly public duty, but in the performance of a public duty in consideration of valuable privileges. So is *Scott* v. *Mayor*, 2 H. & N. 204; *Pittsburgh* v. *Grier*, 24 Pa. St. 54,—and other cases cited. The general rule governing the liability of municipal corporations is thus stated by Judge Dillon: "When it is sought to render a munici-

pal corporation liable for the act of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation. If the corporation appoints or elects them, and can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust, and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation, in its local or special interest, they may justly be regarded as its agents or servants, and the maxim of *respondeat superior* applies; but if, on the other hand, they are elected or appointed by the corporation, in obedience to the statute, to perform a public service not peculiarly local or corporate, but because this mode of selection has been deemed expedient by the legislature, in the distribution of the powers of the government, if they are independent of the corporation as to the tenure of their office and the manner of discharging their duties, they are not to be regarded as the servants or agents of the corporation, for whose acts or negligence it is impliedly liable, but as public or state officers, with such powers and duties as the statute confers upon them, and the doctrine of *respondeat superior* is not applicable." 2 Dill. Mun. Cor. (3d ed.) *s.* 974. This rule is supported by numerous cases cited in a foot-note. In the same section, Judge Dillon, continuing, says,—"It will thus be seen, that, on general principles, it is necessary, in order to make a municipal corporation impliedly liable, on the maxim of *respondeat superior*, for the wrongful act or neglect of an officer, that it be shown that the officer was *its* officer, either generally or as respects the particular wrong complained of, and not an independent public officer; and, also, that the wrong was done by such officer while in the legitimate exercise of some duty of a corporate nature, which was devolved on him by law or by the direction or authority of the corporation." Applying this rule to the facts in this case, it clearly appears that none of the essential facts requisite to charge the city exist. The mayor's powers and duties depend entirely upon the provisions of the charter or constituent acts of the corporation, and valid by-laws passed in pursuance thereof—1 Dill. Mun. Cor. (3d ed.) *s.* 208; and no law or ordinance allows him to interfere in any way with the water-works, the board of water commissioners, or members of the fire department, or with apparatus in their hands. The city council can only act legitimately in certain prescribed ways, one of which is not certainly making the city liable for the results of an accident which they happened to see. They never authorized or directed any exhibition to be given on that day. They cannot act individually; and no authority from them can be shown by any action on their part in the premises. The act complained of was one of individuals. The doctrine of *respondeat superior* does not apply; and this case must be classed *damnum absque injuria,* so far as the defendants are concerned.

ALLEN, J. It has been decided, on a former transfer of this case, that the action could not be maintained upon a declaration for damage from a defective highway. *Edgerly* v. *Concord*, 59 N. H. 78. After amendment of the declaration alleging the careless use of the hydrant by certain officers of the city as the cause of the injury, it was again decided that the plaintiff could not recover upon a declaration which contained no averment of the defendants' duty to prevent the negligent use of the hydrant complained of. *Edgerly* v. *Concord*, 59 N. H. 341. The claim presented at this time, on a further amendment of the declaration and a statement of facts agreed upon for the purposes of the case, is, that the plaintiff's injury arose from the defendants' unlawful and negligent use of one of their hydrants.

The rule that it is the duty of every one to so use his own that another shall not be injured thereby, and that he shall be liable in damages for every injury inflicted through a neglect of such duty, has not the general application to municipal corporations that it has to private corporations and natural persons. 2 Dill. Mun. Cor. (3d ed.) *s.* 948; Cool. Torts, 619, 620. The purposes for which a municipal corporation is created, and its powers and duties, are largely of a public nature, and its acts are, to a great extent, legislative and judicial. The relations of an individual with such a body are so different from his relations with other individuals and with private corporations that questions of liability for injuries arising from a neglect of public corporate duty are rarely solved by the application of a general rule, but each case must be determined, as it arises, on its own facts, and by an interpretation of the statute creating the corporation and defining its powers and duties. 2 Dill. Mun. Cor., *s.* 948; *Lloyd* v. *Mayor, &c., of New York*, 5 N. Y. 369, 375; *Mersey Dock Cases*, L. R. 1 H. L. 93.

As a part of the governmental machinery of the state, municipal corporations legislate and provide for the customary local conveniences of the people, and, in exercising these discretionary functions, the corporations are not called upon to respond in damages to individuals, either for omissions to act, or for the mode of exercising powers conferred on them for public purposes, and to be exercised at discretion for the public good. For injuries arising from the corporation's failure to exercise its public, legislative, and police powers, and from the manner of executing those powers, there is no remedy against the municipality, nor can an action be maintained for damages resulting from the failure of its officers to discharge properly and effectually their official duties. *Eastman* v. *Meredith*, 36 N. H. 284; *Ray* v. *Manchester*, 46 N. H. 59, 60; *Hardy* v. *Keene*, 52 N. H. 370, 377; *Thayer* v. *Boston*, 19 Pick. 511; *Hafford* v. *New Bedford*, 16 Gray 297; *Fisher* v. *Boston*, 104 Mass. 87; *Hill* v. *Boston*, 122 Mass. 344; *Barbour* v. *Ellsworth*, 67 Me. 294; *Judge* v. *Meriden*, 38 Conn. 90; *Jewett* v. *New Haven*, 38 Conn. 368; *Hutchinson* v. *Concord*, 41 Vt. 271; *Grant*

v. *Erie*, 69 Pa. St. 420; *Davis* v. *Montgomery*, 51 Ala. 139; Cool. Torts 620, 621; 2 Dill. Mun. Cor., *ss.* 949, 950, 951, 953, 954, 955. No private action, in the absence of a statute giving it, can be maintained against a city for the neglect of a public duty imposed upon it by law for the benefit of the public, and from the performance of which the corporation receives no profit or advantage. *Hill* v. *Boston*, 122 Mass. 344, and cases cited; 2 Dill. Mun. Cor., *s.* 976. To charge a corporation with damages for injuries arising from misfeasance and neglect of duty, no statute fixing the liability, there must be acts positively injurious committed by authorized agents or officers in the course of the performance of corporate powers, or in the execution of corporate duties, in distinction from those done in a public capacity as a governing agency. If the corporation maintains a private nuisance and causes special damage thereby, or invades any right of property in the performance of an authorized act, the injured person is entitled to his action. *Eastman* v. *Meredith*, *supra*, 284, 291, 292, 296; *Groton* v. *Haines*, 36 N. H. 388; *Gilman* v. *Laconia*, 55 N. H. 130; *Mayor of New York* v. *Furze*, 3 Hill 612; *Bailey* v. *Mayor of New York*, 3 Hill 531; *Lloyd* v. *Mayor of New York*, 5 N. Y. 369, 375; 2 Dill. Mun. Cor., *s.* 966. The act complained of must be one which the corporation is empowered to do, and not wholly *ultra vires*, and the officer committing the act must be the agent or servant of the corporation acting within the scope of his authority, and not an independent public officer whose sole powers are given and defined by statute. *Thayer* v. *Boston*, *supra*, 516; *Perley* v. *Georgetown*, 7 Gray 464; *Fisher* v. *Boston*, 104 Mass. 87; *Tolman* v. *Marlborough*, 3 N. H. 57, 59; Wood Mas. & S. 17; 2 Dill. Mun. Cor., *s.* 974. Municipal corporations may be liable for acts done under a grant of special powers not held under any general law, and from the execution of which some special profit or advantage is derived (*Rowe* v. *Portsmouth*, 56 N. H. 293); and generally for injuries received from the negligent management of property not held for strictly public purposes, corporations are liable in the same way and to the same extent as individuals. *Oliver* v. *Worcester*, 102 Mass. 489, 499; *Richmond* v. *Long's Adm'rs*, 17 Grat. 375; *Petersburg* v. *Applegarth*, 28 Grat. 321.

The act for which the plaintiff claims damages was an experimental use of a public hydrant, with hose attached, by firemen of the city acting under the direction of the chief-engineer, who made the experiment at the request of the mayor and in the presence of the city councils. For all purposes connected with the use of water for extinguishing fires, the management and control of the hydrants were with the fire department under the direction of the board of engineers. The law provides that "The selectmen, being authorized by vote or by-law of any town, shall appoint a chief-engineer and assistant engineers and clerk of the fire department, who shall respectively have the powers and perform the duties

of the chief and other firewards and their clerk, and as a board shall have the powers and perform the duties of the board of firewards." Gen. St., c. 96, s. 21. The duties of firewards. are defined to be to " have at all times the control of all fire-engines, fire-hooks, hose, and all other implements designed: or used for the extinguishment of fire in such town, and of all persons appointed to serve in any engine, hose, or axe company, or other association whose duty shall be to aid in extinguishing fires, in all things appertaining to their appointment." Gen. St., c. 96, s. 2. By ss. 13 and 14 it is made the duty of firewards to appoint firemen whose duties in relation to property in their charge shall be subject to the approval of the firewards. And by s. 11 it is. provided that the chief fireward shall see that all apparatus provided for the extinguishment of fires is kept in repair, and " cause all cisterns and sources of water prepared for the fire department to be fully supplied and kept in order." The city councils, having the powers of towns in relation to like subjects, established a fire department, and provided for a board of engineers, clerk, and firemen, who were duly appointed and became possessed of all the powers and subject to all the duties imposed by the general law upon the firewards and firemen of towns. The engineers being appointed, their duties were defined by the general law, and not by any law, ordinance, or vote of the city. They were public officers, amenable to law for their conduct, and not under control or direction of the city. They were not agents or servants of the city in any such sense as to bind it by their acts or make it liable for their defaults. *Hafford* v. *New Bedford*, 16 Gray 297 ; *Fisher* v. *Boston*, 104 Mass. 87 ; *Jewett* v. *New Haven*, 38 Conn. 368; *Torbush* v. *Norwich*, 38 Conn. 225 ; *O'Meara* v. *Mayor of New York*, 1 Daly 425 ; *Bowditch* v. *Boston*, 101 U. S. 16 ; Shear. & Red. Neg. 139 ; 2 Dill. Mun. Cor., s. 976. On the same principles it has been held that various classes of municipal officers, appointed by the municipality in obedience to an act of the legislature which prescribes their powers and duties, and from which the corporation, in its corporate capacity, receives no special benefit, are not agents of the corporation for whose tortious acts it can be made liable. Among these officers are superintendents of streets and highway surveyors—*Hardy* v. *Keene*, 52 N. H. 370 ; *Small* v. *Danville*, 51 Me. 359; *Walcott* v. *Swampscott*, 1 Allen 101 ; *Barney* v. *Lowell*, 98 Mass. 570 ; police officers—*Buttrick* v. *Lowell*, 1 Allen 172 ; *Elliot* v. *Philadelphia*, 75 Pa. St. 347 ; health officers—*Brown* v. *Vinalhaven*, 65 Me. 402 ; *Ogg* v. *Lansing*, 35 Iowa 495 ; commissioners of charities appointed by the mayor—*Maxmilian* v. *Mayor of New York*, 62 N. Y. 160 ; inspectors of steam boilers appointed by the city—*Mead* v. *New Haven*, 40 Conn. 72.

The public hydrants were constructed for use in extinguishing fires, were " sources of water " for that purpose, and a part of the

machinery under the control and management of the engineers. Though water commissioners were appointed who had the control and management of the water-works constructed under the act of 1871, their powers and duties did not conflict with the powers given by statute to the board of engineers, which included the control and management of the hydrants as sources of water for the extinguishment of fires. The mayor's request that the chief engineer make an exhibition of the force of the hydrants was not an order of the city, and did not change the duties of the engineer and firemen, nor add any new ones to those imposed by statute.

The engineer and firemen, within the scope of their statutory duties, could in many ways use the hydrants and hose at other times and places than at fires. The legal requirement, that the chief-engineer should keep all apparatus furnished in repair, and all sources of water fully supplied and in order, made it necessary to examine the hydrants and test their power. That the firemen should be possessed of skill, and consequent usefulness and efficiency, in extinguishing fires, frequent practice in operating the hydrants with hose and making practical tests of their force in particular places was necessary. And for the purpose of informing the city government of the relative needs of different localities in respect to fire apparatus and water for extinguishing fires, it would not seem that they were exceeding or departing from their line of prescribed duty in exhibiting the force of water, at the hydrant in question, to the mayor and city councils. In either view, whether or not the engineer and firemen acted within their line of duty, the acts were of a public nature, done as public officers and not as agents of the defendants, and the defendants could not on that account alone be liable.

If the act which occasioned the injury was *ultra vires*, wholly outside the corporate powers of the defendants, they could not be liable, even though it might appear that the request of the mayor was a command, and the presence of the city councils witnessing the act was a ratification or adoption of it by the city government. The city councils could not legally ratify nor bind the city by the adoption of an act which the city had no power to perform. 2 Dill. Mun. Cor. 968. But if the act complained of was within the corporate powers of the defendants, and commanded, ratified, or adopted, so as to become an act of the city, it was an act of a public nature, discretionary and legislative, for the injurious consequences of which the defendants would not be chargeable. The city councils were officially engaged in the consideration of the question where to locate a house for a fire-engine. The exhibition of the hydrant's power was upon a "view" by the councils, the better to enable them as judges to legislatively determine the question before them. Just what information they chose to obtain on the subject, and what mode they would adopt in obtaining it, was discretionary with them. The city could not be made liable for any error or

mistake in determining the location of the engine-house, nor for an injury arising from the method used to obtain competent evidence on the subject. If the act was within the chartered, legal, corporate powers of the city, it was an act of a public character, legislative and discretionary, and for the manner of exercising such a power the city could not be made liable.

It is claimed by the plaintiff that the act empowering the city to introduce water conferred special privileges on the defendants and their inhabitants, and is one from which the city, in its corporate character, receives special benefits in the way of rents and tolls for the use of the water, and thereby the duty is imposed of protecting individuals from injury arising from a negligent use of the privileges so conferred. Conceding this to be so, it does not appear that the doctrine has any application to this case. The act from which the injury arose was the use of a hydrant with hose attached, constructed for use in extinguishing fires, and under the control of the fire department, an independent branch of the city government. No toll, or rent, or special advantage accrues to the defendants in their corporate capacity, for the use of the hydrants for such purposes, but a tax is laid for supporting the use. For the use of the water by individuals, for domestic and other purposes, an annual rent is paid or may be exacted. The use of the water from the hydrants is a public use, enjoyed in common by the people, and from which the city in its corporate capacity receives no special advantage; and, in the absence of a statute giving the action, the defendants cannot be made liable for a neglect of duty in respect to such public use. *Hill* v. *Boston*, 122 Mass. 344; *Parker* v. *Rutland*, 56 Vt. 224; *People* v. *Detroit*, 28 Mich. 228, 237, 238, 239; 2 Dill. Mun. Cor., ss. 966, 976, 980, 981.

The local character of the public expense of the water-works, and of the election of the public officers who made the experimental use of the hydrant and requested it to be made, and the fact that the extinguishment of fires was not the sole purpose of the water-works, are immaterial, because the use complained of was made in the exercise of no other power than that of providing, at the public expense, for the protection of the public against fire. For every legal purpose of this case, the use complained of was as purely public as it would have been if the water-works had been constructed by the state, at the expense of the state, for the sole purpose of use by state officers in the extingushment of fire without private remuneration, and the experiment had been made by state officers, legislative and administrative, in their consideration of the location of an engine-house to be built by the state. Of the use of the water-works for which tolls were paid, or of anything done in the business of providing for it, the plaintiff does not complain. Mere division of the state government into general and local does not make either part suable, and neither part is made liable for its uncompensated transaction of the public business of

a fire department, by the circumstance that it is engaged in some other public business, the expense of which is borne by those specially benefited by it instead of the tax-payers.

In *Aldrich* v. *Tripp*, 11 R. I. 141, claimed as an authority by the plaintiff, the city of Providence was held liable for an injury arising from a traveller's horse taking fright at a stream of water thrown across the street, from a hydrant, by employés of the water commissioners. The decision goes expressly on the ground that the commissioners, authorized by the charter granting the waterworks, were not public officers but agents of the city, and that the hydrant was not being used for a public purpose, but the use was of a part of the city's property, from which a special benefit was derived by the city in its corporate capacity. On principle, and by a very great weight of authority, a municipality cannot be made liable, in the absence of a statute giving the remedy, for an injury arising from a negligent use of its property, from which it receives, in its corporate capacity, no special benefit, or from a negligent use of its property by its officers not acting as agents or servants of the corporation, but as public officers whose duties are defined by general law. On the facts stated a case is not made which entitles the plaintiff to recover.

*Case discharged.*

STANLEY and CARPENTER, JJ., did not sit: the others concurred.