Argued and submitted June 4,
affirmed as modified November 6,
petition for rehearing denied December 11, 1979

STATE ex rel DEPARTMENT OF
TRANSPORTATION,
*Respondent,*
*v.*
GLENN, et ux,
*Petitioners,*

(CA 8990, SC 25787)

602 P2d 253

Thomas F. Young, Baker, argued the cause for petitioners. With him on the briefs were Harold Banta, and Banta, Silven & Young, Baker.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

HOWELL, J.

**HOWELL, J.**

Plaintiff filed this action in eminent domain to acquire two separate portions of defendants' land in Union County. Plaintiff took possession of the first parcel consisting of 111 acres in April, 1972, as part of the construction of the Old Oregon Trail Highway. In January, 1974, cracks appeared in the grade. The threat of landslides prompted plaintiff to take possession of another 20 acres of defendants' land in February, 1974. Plaintiff's complaint in condemnation was filed on November 1, 1975. In defendants' answer they claimed damages for loss of calves when they were required to remove the cows from the 20-acre parcel during the winter calving season. The trial court denied plaintiff's motion to strike the reference to loss of calves and the jury included $1,500 damages for loss of cattle. Plaintiff appealed to the Court of Appeals, assigning as error the denial of its motion to strike. The Court of Appeals set aside the jury award of $1,500 for loss of calves and, in addition, vacated the trial court's award of attorney fees in favor of defendants. Defendants petition for review, requesting the reinstatement of the award for damages to the livestock and the award of attorney fees.

I

The allegation in the defendants' answer which the trial court refused to strike stated, in part:

"* * * In addition thereto, after the initial taking which was completed in 1972, slides or slippage occurred within the freeway area, as a result of the freeway construction, and in order to control the situation and prevent continued slippage, the plaintiff, in February, 1974, deemed it necessary to take an additional area of approximately 20 acres, and in so doing occupied or rendered unusable these defendants [*sic*] entire winter feeding and calving areas, and deprived them of the use of a warm spring which provided water for the cattle in such area. That such occupation occurred during the middle of winter feeding and calving season, requiring the cattle to be

[19]

moved to other and much less desirable locations, thereby causing heavy and unusual death losses among calves and requiring the dried cows which resulted from the calf loss to be sold at greatly reduced prices to avoid having to carry them over to another season, * * *."

The defendants' argument seems to be that loss of livestock as personal property can be a compensable item in an action to condemn real property if the defendants had inadequate notice of the proposed taking and no opportunity to remove the cattle to a suitable alternative site. The defendants' pleading does not specifically allege no notice or inadequate notice but the plaintiff did not challenge the insufficiency of the pleading in its motion to strike. Plaintiff's primary contention was that damages for loss of livestock constituted "a pleading of noncompensable items of damage."

The defendants have not cited us to any authority in Oregon or elsewhere which allows recovery for the *indirect* loss of personal property in an action for the taking of real property for public use. When the state appropriates real property, it must compensate the landowner for the value of the land, which includes the value of buildings or other permanent improvements and fixtures on the land to the extent that they enhance the value of the land to which they are affixed. "No allowance can be made for personal property as distinguished from fixtures affixed to the condemned realty." *Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 412-13, 281 P2d 707 (1955). Title to the ownership of the personal property on the condemned premises remains in the condemnee who is entitled to remove such property. *See* 4A Nichols, Eminent Domain 14-294, § 14.2471[2] (rev 3d ed 1976).

If, in removing his personal property, the condemnee sustains removal costs or damages to his personal property, such expenses or losses are not recoverable from the condemnor. The rule is stated in 1 Orgel on Valuation Under the Law of Eminent Domain 306, § 69 (1953):

[20]

"The weight of authority is in support of the ruling which denies compensation to the owner for removal costs and breakages or other injury to personal property. * * *"

*See also* 4A Nichols, *supra.*

Losses to personal property were held noncompensable in several similar cases: *United States v. 1,132.50 Acres of Land, Etc., Allegheny,* 441 F2d 356 (2d Cir) *cert. denied* 404 US 850, 92 S Ct 86, 30 LEd 2d 89 (1971) (loss of stockpiled sand and gravel when the land was flooded for a reservoir project); *R. J. Widen Co. v. United States,* 357 F2d 988, 174 Ct Cl 1020 (1966) (loss of hides by a tannery when the government diverted the plant's water supply); *United States v. 40.558 Acres of Land, Etc.,* 62 F Supp 98 (D Del 1945) (loss of stock and farm machinery when the government took claimant's property adjacent to an Air Force base during World War II under circumstances where, as claimed in the instant case, the owner had little or no notice).

We hold that any damages for loss of cattle in this case do not fall within the category of property "taken" for public use under the provisions of Article I, Section 18, of our Constitution.[1]

## II

After the Court of Appeals set aside the jury award for $1,500 livestock damage, the jury verdict was reduced from $86,258 to $84,758. Because the $84,758 jury verdict was less than the state's highest settlement offer of $85,000, the Court of Appeals vacated the trial court's award of attorney fees to the defendants. The defendants argue that ORS 35.346(2)(a) allows the award of attorney fees in this case.

A condemnee's right to attorney fees is provided for in ORS 35.346. That statute states in part:

"(1) At least 20 days prior to the filing of any action for condemnation of property or any interest

---

[1] Article I, Section 18 of the Oregon Constitution requires compensation for property "taken" for public use and does not include "damages."

therein, the condemner shall make a written offer to the owner or party having an interest to purchase the property or interest, and to pay a stated amount as compensation therefor and for any compensable damages to remaining property.

"(2) If a trial is held for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, the court shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses as defined in subsection (2) of ORS 35.335 in the following cases, and no other:

"(a) *If the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner to those defendants appearing in the action at least 30 days prior to commencement of said trial;* * * *." (Emphasis added.)

The trial court found, and the parties do not dispute, that the state's highest settlement offer was for $85,000, submitted in writing more than thirty days prior to trial. The state's total settlement offer was in a letter from the Assistant Attorney General, dated February 16, 1977, that said: "This is to offer on behalf of the plaintiff to *fully* and *finally* settle this case for the *total* sum of $85,000." (Emphasis supplied.)

Prior to trial, the parties stipulated that the state took possession of the 111.58 acres in April of 1972 and then took possession of the additional 20.64 acres in February of 1974. The only issues submitted to the jury were the valuations of the properties acquired by the state. The jury returned a verdict assessing the value of land and crops taken in April, 1972, at $63,558; the value of land taken in February, 1974, at $21,200; and the value of livestock damage caused by the February, 1974, taking at $1,500, for a total of $86,258. The jury verdict did not contain an award for interest, but the trial court, in the judgment, ordered the state to pay interest on the land and crops taken in 1972 and on the land taken and livestock loss in 1974.

The trial court ordered the interest to run at 6 per cent per annum from the respective dates of possession.[2]

Although the jury verdict, with the elimination of the livestock damage award, amounted to only $84,758 and was therefore less than the state's offer, the interest awarded by the court totaled an additional amount of approximately $24,000. Therefore, in order to satisfy the jury verdict, which represented only the value of the properties when taken, the state would have to pay over $108,000 as of the date of the trial verdict—a sum which represents the value of properties taken plus interest.

The state does not dispute the fact that it is required to pay interest when, as in this case, it takes possession of property prior to filing and litigating the condemnation proceeding. The state argues, however, that in awarding attorney fees pursuant to ORS 35.346(2)(a) the amount of just compensation assessed by the verdict in the trial does not include interest.

Our analysis of ORS 35.346(2)(a) must begin with an understanding of the function of interest in the condemnation award. When the state takes possession of property prior to filing condemnation proceedings, the value of the property is measured as of the date of the original taking. *See State Highway Com. v. Stumbo,* 222 Or 62, 74-77, 352 P2d 478, 2 ALR3d 1028 (1960). Upon completion of the condemnation proceedings, however, the landowner has been deprived of both his land and its monetary value from the time the state took possession. The landowner is therefore entitled to legal interest on the value of his property measured from the date the state took possession. *Id.* Prior decisions of this court have explained that the interest award is part of the "just compensation" required by Article I, Section 18 of the Oregon Constitution. *See State Highway Com. v. Sauers et ux,* 199 Or 4

---

[2] The state had deposited $10,700 with the court on February 9, 1976. Accordingly, the trial court ordered no interest to run on the deposit. *See* ORS 35.265(3).

17, 421-22, 262 P2d 678 (1953); *State Highway Com'n v. Deal et al,* 191 Or 661, 682-85, 233 P2d 242 (1951).[3]

Sometimes the interest award has been included in the language of the jury verdict at trial. *See, e.g., Highway Com. v. Helliwell,* 225 Or 588, 590, 358 P2d 719 (1961). *See also State Highway Com. v. Sauers et ux, supra* at 422. But even if the jury verdict does not include the interest award, the trial court must award interest in its judgment because interest runs as a matter of law. *Highway Com. v. Helliwell, supra* at 591; *State Highway Com'n v. Deal, et al, supra* at 684. In the instant case, therefore, the trial court's award of interest followed as a matter of law to satisfy the constitutional mandate of just compensation.

Although "just compensation" includes the right to interest from the time the state takes possession, the award of attorney fees pursuant to ORS 35.346(2)(a) depends on the meaning of the phrase, "just compensation assessed by the verdict in the trial." Relying on *Highway Com. v. Helliwell, supra,* the state contends that interest, which runs as a matter of law, is not part of the amount assessed in the verdict.

The *Helliwell* case involved the interpretation of ORS 366.380(9), a predecessor statute to ORS 35.346 which was repealed in 1971. *See* 1971 Or Laws ch. 741,

_____

[3] The Oregon Constitution, Article I, Section 18, provides:

"Private property shall not be taken for public use, * * * without just compensation; * * * ."

Relying on United States Supreme Court decisions interpreting identical language in the Fifth Amendment, this court said, in *State Highway Com'n v. Deal et al,* 191 Or 661, 233 P2d 242 (1951):

"* * * We adopt the construction of the words 'just compensation' in our Constitution which has been placed upon the same words in the Federal Constitution by the highest court in the land, and hold as a matter of law that the defendants [condemnees] are entitled to interest at the rate of 6% per annum from the day of the taking on whatever sum the jury may find to be the fair market value of the property, such interest to be deemed a part of the damages suffered by the defendants as a result of the appropriation." 191 Or at 684.

*See also* 3 Nichols, Eminent Domain 8-293, § 8.63 (rev 3d ed 1978).

[24]

§ 38. ORS 366.380(9) provided that the condemnee can recover costs and disbursements, including a reasonable attorney fee, unless

> " * * * it appears that the commission tendered the defendants before commencing the action an amount equal to or greater than that assessed by the jury, * * *."

In *Helliwell* the State Highway Commission offered the landowner $18,000 *prior* to the taking. The landowner refused the offer and the jury returned a verdict for $18,000. Helliwell contended she was entitled to add interest so that the award would be greater than the offer. We held that the defendant was not entitled to attorney fees because the offer preceded the taking of possession and if defendant had accepted the offer "she could have placed the money at interest."

The *Helliwell* case, however, is not applicable because, in the present case, the state's settlement offer was not made prior to the taking and, in fact, was made nearly five years *after* the state took possession of the defendants' first parcel of land.

When, as in the present case, the condemnor takes possession of property nearly five years before making its highest settlement offer, the constitutional requirement of just compensation requires the condemnor to pay the value of the property plus interest from the date of possession. If the condemnor's settlement offer does not include compensation for almost five years' interest, the condemnee has no reason to settle for only the value of the property and has every reason to litigate to recover the interest. We believe that the underlying policy of ORS 35.346(2)(a) is to reduce the incidence of expensive and time-consuming litigation by requiring that the condemnor offer an amount that would encourage the condemnee to settle his claim for "just compensation." In order to effectuate the policy of ORS 35.346(2)(a), the state's offer should therefore include interest accruing from the date of possession to the date of the offer. Although, as we said in *Helliwell*,

the jury itself does not assess interest in the verdict, nevertheless, interest accrued as of the date of the offer must be added to the amount assessed by the jury verdict in order to determine whether the state's highest settlement offer satisfies ORS 35.346(2)(a), construed in light of the requirements of Article I, Section 18, of the Oregon Constitution.

Accordingly, as the state's offer amounted to less than the jury award plus interest from the dates of taking, the defendants were entitled to attorney fees and costs as determined by the trial court.

Affirmed as modified.