Argued and submitted March 23, affirmed August 31, reconsideration denied October 28, petition for review allowed November 15, 1983 (295 Or 56) 297 Or 755, 688 P2d 72 (1984)

# RICHARD VERLE EMERY et al,
## *Respondents,*

### *v.*

# STATE OF OREGON et al,
## *Appellants.*

### (9072; CA A25025)

668 P2d 484

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause and filed the briefs for appellants. With him on the briefs were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Robert L. Nash, Bend, argued the cause for respondents. With him on the brief was Johnson, Marceau, Karnopp & Petersen, Bend.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

This is a civil case in which plaintiffs seek compensation for damage to a motor vehicle that resulted when state police officers, during a lawful seizure and search, cut holes in the body of the vehicle in search of bullets and ballistics data to be used as evidence in a homicide prosecution. The specific issue presented is whether the state must pay for private property, not contraband or otherwise subject to forfeiture, which is lawfully seized for evidentiary use in a criminal investigation and which is necessarily damaged or destroyed by the state in the performance of necessary investigative examinations and tests. From a judgment for plaintiffs in the amount of $2,100 damages and $1,508 in attorney fees,[1] rendered on cross motions for summary judgment, the state appeals. We affirm.

The parties stipulated to the pertinent facts:

"Plaintiffs and defendant State of Oregon and Oregon Department of State Police stipulate as follows:

"1.   The parties agree to submit this matter to the court for decision on stipulated facts, based upon the following stipulated facts, the authorities presented in the State's Motion to Dismiss, and the authorities presented in plaintiffs' Counter Motion for Summary Judgment, and the court's file herein.

"2.   Plaintiffs Richard Emery and his mother Lorena Emery are the owners of a 1977 Ford pickup truck, Oregon license number GKF761.

"On or about December 2, 1979, near Paisley, Lake County, Oregon, an altercation occurred between Richard Emery and David Sanchez in and around the Emery pickup truck. The incident resulted in the death of David Sanchez.

"Richard Emery was arrested and charged with murder, and the pickup truck, several firearms and other items were seized by the State of Oregon for evidentiary purposes on a warrant issued at the request of the Lake County District Attorney's Office.

"During the investigation, state police crime lab officers operating under the direction of the Lake County District Attorney's Office dismantled portions of the pickup truck including the roof, headliner, door panels and other parts. A bullet hole was found in the headliner of the pickup cab. State

---

[1] Attorney fees were awarded pursuant to ORS 20.080.

officers cut off the roof and used the roof panel for ballistics tests to determine the caliber of the firearm, angle of fire, etc. The seizure of the pickup truck, the dismantling of it and the tests performed by the state on the truck and its parts were reasonably necessary in the course of the state's criminal investigation.

"3.   * * * The murder prosecution was settled and dismissed on a negotiated plea to second degree manslaughter. * * *

"After the case was settled, the property seized from the Emerys was returned, including the pickup truck. However, the truck was returned in its dismantled condition with the roof, windshield and other parts removed. A repair estimate prepared by Dave's Body Shop, Bend, dated August 13, 1980 shows a total cost of $2,290.90 for reasonable and necessary repairs to the pickup. The Emerys also incurred reasonable and necessary towing expenses of $40.00.

"4.   This case presents an issue of law, which is whether or not the State of Oregon is obligated to pay just compensation to the owners of private property which is seized for use as evidence in a criminal case, and is damaged in the course of reasonably necessary tests performed in the state's investigation, and which is returned to its owners in its damaged condition when no longer needed for evidentiary purposes.

"5.   The parties stipulate that this court has jurisdiction to decide this case based upon the records and files herein, the stipulated facts, and the arguments of counsel to be presented at the November 20, 1981 hearing.

"6.   If the plaintiffs prevail, plaintiffs are entitled to an award of reasonable attorney fees pursuant to ORS 20.080 as part of plaintiffs' costs and disbursements."

Plaintiffs, in their brief, make their approach to the problem very explicit:

"This is not a tort action. Plaintiffs do not claim that the conduct of the police in seizing the pick-up truck and thereafter dismantling it was in any way wrongful or unnecessary. Plaintiffs stipulated that the seizure of the truck, the dismantling of it and the tests performed by the State on the truck and its parts were reasonably necessary in the course of the State's criminal investigation."

Plaintiffs relied on three distinct theories in contending that statutory, common law and constitutional authorization exists to maintain a cause of action to recover compensation for

damage to lawfully seized property that reasonably resulted from a police examination of the property for evidence of crime. Plaintiffs claim that ORS 133.633, in addition to requiring the physical return of property lawfully subjected to seizure and investigation, authorizes an award of damages for the repair of that property. They also contend that the lawful seizure of the property creates a constructive bailment under which the police either must preserve the property from damage, including damage which necessarily results from examination or analysis of the property for evidence of crime, or must pay for the damage that arises in the course of police custody. Finally, plaintiffs maintain that the damage to the truck attains the status of a "taking" for which Article I, section 18 of the Oregon Constitution requires the payment of compensation. We consider the last theory first.

The Oregon Constitution, Article I, section 18, provides, in pertinent part:

> "Private property shall not be *taken for public use,* nor the particular services of any man be demanded, *without just compensation;* * * *." (Emphasis supplied.)

There is no question that a motor vehicle is "property" under section 18:

> "* * * Property is property, whether it consists of much or little, or is of large or small value. If it is owned by an individual and has a lawful use, the individual is entitled to the constitutional protection, and it should not be denied him by the courts." *Bowden v. Davis, et al,* 205 Or 421, 434, 289 P2d 1100 (1955) (holding that a horse is "property" under section 18).

The state, apparently accepting the idea that the vehicle in this case is "property," urges that there has been no "taking":

> "Article I, section 18 makes no provision for compensation for property which is not taken, but merely damaged. *Moeller et ux v. Multnomah County,* 218 Or 413, 425-26, 345 P2d 813 (1959). Therefore, in order to claim compensation under plaintiffs' inverse condemnation theory, plaintiffs must allege facts which amount to a 'taking' of their pickup truck. Here, when the facts of police seizure and possession of the vehicle are properly laid aside, and the focus is limited to the acts which resulted in the damage, it is clear that the damaging search constituted a single, isolated act which did not itself affect either plaintiffs' title in or right to possession of the vehicle. *See Moeller, supra,* 218 Or at 429-30. The damaging

search amounted only to a temporary interference with the plaintiffs' rights in the truck, little different in effect from the situation in which a state vehicle collides with a private automobile. Under these circumstances, the truck was merely damaged, and not appropriated for public use. Article I, section 18 therefore does not authorize the recovery of damages for the injury done to the truck."

We disagree.

Plaintiffs' constitutional theory is "inverse condemnation." The Oregon Supreme Court made the following summary of Oregon law on this subject in *Moeller et ux v. Multnomah County, supra,* 218 Or at 427, the case on which the state relies:

"In each of the Oregon cases * * * on the subject of inverse condemnation, there has been a substantial taking or destroying of the individual's property. * * * [T]he taking has deprived the owner of a substantial part of his property as well as the use thereof, and usually permanently.

"* * * * *

"* * * [T]he people of Oregon have not seen fit to amend their constitution to include 'damage' with 'taking' so as to waive the immunity of the state or county in those actions for damages which do not amount to a taking."

*Moeller* presents a somewhat circular definition. It is clear, on the one hand, that the Oregon Constitution requires just compensation for any "taking," but not for mere damage. On the other hand, however, "taking" seems to mean, in the *Moeller* court's view, damage sufficient constitutionally to require just compensation.

The facts of the leading cases are not the best guideposts, either. In *Moeller,* it was held that intermittent blasting, which deposited dust but not rocks or debris on plaintiff's property, was not a "taking." By contrast, in *Tomasek v. Oregon Highway Comm'n,* 196 Or 120, 146-150, 248 P2d 703 (1952), it was held that, where construction of a highway bridge over a river resulted in a narrowed river channel and then resulted in erosion of a portion of plaintiff's downstream property, there had been a "taking." *Accord, Morrison v. Clackamas County,* 141 Or 563, 18 P2d 814 (1933). A more recent case, *State ex rel Dept. of Trans. v. Glenn,* 288 Or 17, 602 P2d 253 (1979), is closer on its facts, but still not very helpful,

because the primary issue was whether compensation for loss of personal property could be obtained in a condemnation action for real property taken by the state.

From the foregoing cases we derive the following principles for construction of Article I, section 18:

■ (1) Personal, as well as real property, may be "taken." *Bowden v. Davis, supra.*

■ (2) If personal property is "taken," the taking must be direct, and not merely the consequence of the taking of some other specie of property. *State ex rel Dept. of Trans. v. Glenn, supra.*

■ (3) To be taken, property must be substantially damaged or destroyed, and the interference with the owner's interest must be significant. *Moeller et ux v. Multnomah County, supra; Tomasek v. Oregon Highway Comm'n, supra.*

■ (4) It is not the necessity of the taking, but the extent of the damage, that is controlling. *Moeller et ux v. Multnomah County, supra.*

■ (5) The question whether property has been "substantially" damaged is a function both of the kind of property and the nature and extent of the damage. *Moeller et ux v. Multnomah County, supra; State ex rel Dept. of Trans. v. Glenn, supra.*

■ Applying these principles to this case, we hold that a pickup damaged to the extent that it requires over $2,000 in repairs has been "taken" for the purposes of Article I, section 18.

Having held there has been a taking, we next consider whether, in spite of the taking, some other doctrine precludes plaintiff's recovery.

The state argues that the pickup was seized and dismantled pursuant to the "police power" of the state and that no recovery may be had for such state actions. The pickup was seized by the police under power of a warrant—hence, the "police power" is involved—but that does not settle the issue.

■ While there is no Oregon case on the point that we have been able to find, it is accurate to state generally that, in

order for a taking by the state of private property to be non-compensable, the taking must have relieved an imminent threat of harm to persons or property, or it must otherwise have abated a nuisance. *See, generally, Annot.* 14 ALR2d 73, 74 (1950), where the general principle is there said to be:

"Under the police power, the government may prevent an owner of property from using it in such manner as directly to inflict or threaten public harm as traditionally defined, or from permitting it to remain in a condition to inflict or threaten such harm. Every individual holds his property subject to this power. It includes the power to destroy the property if such destruction is reasonably necessary to accomplish the purpose. In such a case, the property is deemed a public nuisance and its destruction falls within the general power of public agencies to abate such a nuisance.

"But as against the property rights of the owner, the power to destroy the property depends on its being in fact a nuisance. Some kinds of property harmful in their nature, and some conditions of property, are deemed nuisances at common law. Other types of property and other conditions or circumstances of property, less imminently harmful but of harmful tendency, may be declared nuisances by legislation. But the fact of nuisance is a condition to the exercise of the power of government to forbid or destroy it. Outside the range of actual nuisance character, the property is protected by constitutional principles. To destroy it when it is not harmful in its nature or condition is to deprive the owner of it without due process of law and to deny him the equal protection of the laws."

Leading cases in this area deal with the familiar authority of the government to destroy allegedly decaying food, *North American Cold Storage Co. v. Chicago,* 211 US 306, 29 S Ct 101, 53 L Ed 195 (1908); to destroy buildings to prevent the spread of disease, *Juragua Iron Co. v. United States,* 212 US 297, 29 S Ct 385, 53 L Ed 520 (1908); and to destroy buildings to prevent their use by an enemy in time of war, *United States v. Caltex (Philippines) Inc.,* 344 US 149, 73 S Ct 200, 97 L Ed 708 (1952). As the proposition was stated in an old Supreme Court case:

"At the common law every one had the right to destroy real and personal property, in cases of actual necessity, to prevent the spreading of a fire, and there was no responsibility on the part of such destroyer, and no remedy for the owner." *Bowditch v. Boston,* 101 US 16, 25 L Ed 980 (1879).

As we understand it, this police power doctrine is limited to cases in which the action was actually necessary to avoid some serious—and, usually, immediate—public harm, such as the spread of fire or disease. We examine the present case in this light. What the police sought in this case was evidence of a crime, evidence which could only be obtained by destroying other property. We assume that the evidence was important to the case. The question is: Does obtaining important evidence in a criminal case stand on the same footing as the need to prevent the spread of fire or disease?

Obviously, reasonable minds could differ on this question. For our part, however, we find that the two concerns are different, not just in degree, but in kind. Fire and disease are clear, singular dangers whose impact on the public is direct and serious. On the other hand, evidence in criminal cases, and the cases themselves, come in infinite variety. The importance to the public of prosecution in general cannot be gainsaid. Still how important is the prosecution of any *particular* case? If the answer is that some, at least, are important enough, then: Which ones?

This matter arose out of a homicide case. Surely there could not be a more important kind of criminal prosecution, except treason. Where is the line to be drawn? Is necessary property destruction to go uncompensated in all criminal cases? For example, may the police, seeking proof of the offense of possession of an open container of an alcoholic beverage in a vehicle, ORS 487.841, tear up automobile seat cushions to test for the presence of alcohol because one of the bottles was spilled on the seat? If not, where is the line between that case and this one?

Recognizing that a line must be drawn somewhere, we believe that no satisfactory, principled halfway position is available. It is all criminal prosecutions (and all evidence) or none.

We conclude that the answer should be none. The element of widespread public harm which creates a nuisance—the touchstone of the traditional cases—is not present. Criminal evidence is not a nuisance. Criminal acts are, but the one to which the evidence in question pertains has already occurred—it cannot be avoided by the uncompensated destruction of property. The state had every right to take the

action it took here, and it even had the duty to take it; but it also had the duty, under Article I, section 18, to pay for it.

One final point merits mention. There is in the state's appeal in this case a sense of outrage that a plaintiff like this one—a killer, quite literally—should recover damages. The direct answer to this point is that the Oregon Constitution's protections are not lost to criminals. However, we also note, in passing, that (1) one of the plaintiffs in this case has not been convicted of any offense and (2) the criminal defendant's recovery here *may* be offset by the provisions of ORS 161.665, *see State v. Haynes,* 53 Or App 850, 633 P2d 38 (1981), if the manner in which the case has been pleaded and tried does not preclude that.

Affirmed.