Argued and submitted March 2, on appeal, reversed and remanded with instructions to vacate judgment for plaintiffs and enter judgment for defendant on tort claims; on cross-appeal, reversed and remanded with respect to livestock and alfalfa and wheat fields; otherwise affirmed on inverse condemnation claims July 18, Hawkins' reconsideration and City of La Grande's reconsideration denied September 26, both petitions for review allowed November 6, 1990 (310 Or 547)

Byron W. HAWKINS
and Jean Hawkins,
*Respondents - Cross-Appellants,*

*v.*

CITY OF LA GRANDE,
*Appellant - Cross-Respondent.*

(86-11-30872; CA A47064 (Control))

Fred D. WALLENDER
and Sharon K. Wallender,
*Respondents - Cross-Appellants,*

*v.*

CITY OF LA GRANDE,
*Appellant - Cross-Respondent.*

(86-11-30873; CA A47065)
(Cases Consolidated)

795 P2d 556

Mildred J. Carmack, Portland, argued the cause for appellant - cross-respondent. With her on the briefs were Richard J. Kuhn and Schwabe, Williamson & Wyatt, Portland.

W. Eugene Hallman, Pendleton, argued the cause for respondents - cross-appellants. With him on the briefs was Mautz Hallman, Pendleton.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

### EDMONDS, J.

Defendant city appeals from judgments for plaintiffs[1] on their tort claims, assigning as error the denial of its motion for a directed verdict at the close of all the evidence.[2] ORCP 60. Plaintiffs cross-appeal, arguing that the trial court erred in granting defendant's motion for a directed verdict on plaintiffs' inverse condemnation claims.[3] We reverse on the appeal and reverse in part on the cross-appeal.

■    Because of flooding, defendant discharged effluent from its sewage treatment plant into an adjacent slough from February 25 to March 3, 1986. During that period, plaintiffs' properties were temporarily flooded. Plaintiffs presented evidence at trial that the flooding was caused by the discharge and that, as a result, their real and personal properties were damaged or destroyed.

The trial court rejected defendant's argument that it was immune from tort liability under ORS 401.515(1),[4] which provides:

"During the existence of an emergency, the state and any local government, any agent thereof or emergency service worker engaged in any emergency services activity, while complying with or attempting to comply with ORS 401.015 to 401.105, 401.260 to 401.325 and 401.355 to 401.580 or any rule promulgated under those sections, shall not, except in cases of wilful misconduct, gross negligence or bad faith, be liable for the death or injury of any person, or damage or loss of property, as a result of that activity."

ORS 401.025(4) provides:

" 'Emergency' includes any man-made or natural event or

---

[1] Plaintiffs' actions were brought separately but were consolidated for trial and appeal.

[2] Defendant also assigns error to the failure of the trial court to instruct the jury that there is no liability for release of an impoundment of water, if the amount released does not exceed the amount flowing into the impoundment. We do not reach that assignment.

[3] Defendant moved for a directed verdict on all or part of plaintiffs' inverse condemnation claims. In response to the motion, the court struck all of the complaints' allegations that relate solely to those claims. For purposes of this opinion, we treat the court's action as granting defendant's motion *in toto*.

[4] Contrary to plaintiffs' argument, defendant preserved this issue.

circumstance causing or threatening loss of life, injury to person or property, human suffering or financial loss, and includes, but is not limited to, fire, explosion, flood, severe weather, drought, earthquake, volcanic activity, spills or releases of oil or hazardous material as defined in ORS 466.605, contamination, utility or transportation emergencies, disease, blight, infestation, civil disturbance, riot, sabotage and war."

ORS 401.025(10) provides:

" 'Emergency services' includes those activities provided by state and local government agencies with emergency operational responsibilities to prepare for and carry out any activity to prevent, minimize, respond to or recover from an emergency. These activities include, without limitation, coordination, preplanning, training, interagency liaison, fire fighting, oil or hazardous material spill or release clean up as defined in ORS 466.605, law enforcement, medical, health and sanitation services, engineering and public works, search and rescue activities, warning and public information, damage assessment, administration and fiscal management, and those measures defined as 'civil defense' in section 3 of the Act of January 12, 1951, P.L. 81-920 (50 U.S.C. 2252)."

Plaintiffs do not argue that defendant was guilty of wilful misconduct, gross negligence or bad faith, but they do argue that the court correctly ruled that a jury question existed as to whether there was an emergency under ORS 401.515(1). They assert that there was a jury question, because defendant did not look for an auxiliary pump for its sewage treatment plant when it knew one week before the discharge that the flood water was coming and because it failed to notify landowners who might have been affected by the discharge. Those facts do not create an issue of fact as to whether there was an "emergency" within the meaning of ORS 401.025(4); they relate only to defendant's response to the flood. We hold, as a matter of law, that defendant was immune from tort liability under ORS 401.515(1). The court erred in not granting a directed verdict on the tort claims.[5]

At the close of plaintiffs' evidence, the trial court granted defendant's motion for a directed verdict on plaintiffs'

---

[5] Because of our disposition of the appeal, we need not address defendant's assignment that the court erred in denying its motion made on the ground that it is immune from tort liability under ORS 30.265(3).

inverse condemnation claims.[6] On cross-appeal, plaintiffs rely on Article I, section 18, of the Oregon Constitution, which provides, in relevant part:

> "Private property shall not be taken for public use * * * without just compensation * * *."

In granting the motion, the trial court said:

> "Well, I want to say this. The Oregon cases that have allowed—have involved diversions which were permanent in nature. And I—I don't think, and I'm going to hold as a matter of law, that a single instance of flooding is not an act of condemnation—inverse condemnation. And all you have here is you've got a good old legitimate bonafide action and claim for damages and that's what you have and nothing more because as I said, it doesn't, in my opinion, constitute a taking as distinguished from the infliction of damage."

We disagree with the trial court's premise that a single incident of flooding can never be a taking. For there to be a taking, the property must be substantially damaged or destroyed by the government's action and, generally, its fair market value must be permanently reduced as a result, regardless of whether the damage is caused by a single incident or by continuous conduct. The mere fact that the property or property owner suffered *some* damage is not enough. The question of whether property has been "substantially damaged" requires an analysis of the kind of property and the nature and extent of damage. *See Lincoln Loan v. State Hwy. Comm.*, 274 Or 49, 56, 545 P2d 105 (1976); *Moeller v. Multnomah County,* 218 Or 413, 427, 345 P2d 813 (1959); *Emory v. State of Oregon,* 64 Or App 429, 435, 668 P2d 484 (1983), *rev'd on other grounds* 297 Or 755, 688 P2d 72 (1984).

Plaintiffs point to nothing in the record to indicate that their land or buildings permanently lost value as a result of the flooding or that they were forced to give up possession of any part of that property permanently. Rather, the only evidence was that some damage was sustained as a result of their

---

[6] Plaintiffs argue that, regardless of whether defendant is immune from tort liability under ORS 401.515(1) or ORS 30.265(3), immunity does not protect defendant from claims for inverse condemnation. Defendant expressly conceded that argument at oral argument. Therefore, we do not consider that question.

land being temporarily flooded and that a certain sum of money was required to repair the damage.[7]

The facts of this case are similar to the facts in *Moeller v. Multnomah County, supra,* where the defendant county had conducted blasting operations at a rock quarry near the plaintiffs' home. The blasting caused the floors, walls and ceilings of the house to crack and dust to get into the home. However, the plaintiffs did not lose the use of their property, except perhaps the basement for a short time. The court held that, notwithstanding the damage to the home and the possible temporary loss of use of the basement, there was no taking. We hold, as a matter of law, that, because of the lack of permanent diminution in value or loss of permanent use, the damage did not rise to the level of a taking. The court did not err in granting the motion as to the land and buildings.

■      Turning to plaintiffs' other claims, we note first that personal property can be taken. *See Coos Bay Oyster Coop. v. Highway Com.,* 219 Or 588, 594, 596, 348 P2d 39 (1959); *Bowden v. Davis,* 205 Or 421, 434-36, 289 P2d 1100 (1955); *Emery v. State of Oregon, supra,* 64 Or App at 433-35. However, for there to be a taking, the property must be directly damaged by the government action, rather than damaged as a consequence of the action. *See State ex rel Dept. of Trans. v. Glenn,* 288 Or 17, 20-21, 602 P2d 253 (1979); *Emery v. State of Oregon, supra,* 64 Or App at 435.

■      Plaintiffs contend that some of their livestock died as a direct result of the flooding and were, therefore, taken. Defendant, on the other hand, argues that the animals' deaths were, at most, uncompensable consequential damage. We conclude that plaintiffs presented evidence at trial from which the jury could have drawn the inference that the livestock died as a direct result of the flooding[8] and that the court, therefore,

---

[7] After one of the plaintiffs testified that his home was worth less after the flooding, defense counsel asked him to explain the difference between the value before and after. He explained that the amount of the difference was "what it's going to take to get it back into condition" and that it was equivalent to the estimate he had received from a contractor as to how much it would cost to repair it. The other evidence regarding plaintiffs' land and buildings was of a similar nature.

[8] One plaintiff testified:

"[The flood water] affected the hogs because myself and Grady who was working for me were involved with this flooding. * * * And the hogs didn't get the care that

erred in granting the motion as to that property. Similarly, regarding plaintiffs' alfalfa and wheat, they offered testimony that, rather than merely damaging them, the flooding destroyed them, making reseeding necessary. Under those facts, the jury could have found that the fields were taken. The court erred in granting the motion as to the fields.[9]

On appeal, reversed and remanded with instructions to vacate judgment for plaintiffs and enter judgment for defendant on tort claims; on cross-appeal, reversed and remanded with respect to livestock and alfalfa and wheat fields; otherwise affirmed on inverse condemnation claims.

---

they needed."

He concluded that the hogs died because of "[e]xposure, neglect, the water." Two of the other plaintiffs testified that they could not get cattle, a number of which were calving, out of the corral or into the barn because of the flooding, that some cattle were standing in water, and that a number died as a result. There was further testimony that the problem was compounded by the cattle not receiving the care they should have because of other problems caused by the flooding.

[9] Because we would hold that the court erred in granting the motion as to the fields, regardless of whether they were real or personal property, we need not decide which category they fall into. *See Falk v. Amsberry*, 53 Or App 735, 739, 633 P2d 799 (1981).