## BOWDITCH *v.* BOSTON.

1. Under the statute of Massachusetts and the ordinance of Boston adopted pursuant thereto, that city is not responsible to the owner of buildings there situate which are destroyed in order to prevent the spreading of a fire, unless a joint order for their destruction be given by three or more engineers of the fire department, who are present, of whom the chief engineer, if present, must be one.
2. As it is only by force of the statute and ordinance that the city incurs a liability to such owner, he is not entitled to recover unless his case be within their terms, and the joint order be shown.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

The facts are stated in the opinion of the court.

*Mr. George W. Morse* for the plaintiff in error.

*Mr. J. P. Healy*, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The plaintiff in error, who is the assignee of the estate of Charles H. Hall, a bankrupt, alleges and relies upon the following case :—

A great fire occurred in the city of Boston on the night of the 9th and 10th of November, 1872. Hall was then the lessee and occupant of the premises described in the declaration. The fixtures, merchandise, and tools belonging to him in the part of the building covered by the lease were of the value of $60,000, and his leasehold estate was of the value of $10,000. The fire did not first break out in his premises, but that part of the building and the contents were in danger from its progress. Three fire-engineers, then at a place of danger in the immediate vicinity, directed the building including his premises to be demolished, to arrest the spreading of the fire. The building was blown up and destroyed accordingly. This measure stopped the progress of the fire. The premises were left unfit for occupation, and his personal effects, before mentioned, were destroyed by the catastrophe. This action is brought by his assignee to recover what was thus lost to the bankrupt.

The claim is founded upon certain statutes of the State of Massachusetts, and an ordinance of the city of Boston. A brief reference to their provisions, material to be considered in this case, will be sufficient.

In cases of fire, any three of certain designated officers "may direct any house or building to be pulled down or demolished when they may judge the same to be necessary in order to prevent the spreading of the fire." Mass. Gen. Stat., c. 24, sect. 4.

"If such pulling down or demolishing of a house or building is the means of stopping the fire, or if the fire stops before it comes to the same, the owner shall be entitled to recover a reasonable compensation from the city or town; but when such building is that in which the fire first broke out, the owner shall receive no compensation." Id., sect. 5.

The city of Boston was authorized to establish a fire department, to consist of so many engineers, &c., "as the city council, by ordinance, shall from time to time prescribe." Mass. Special Stats., 1850, c. 22.

Pursuant to the authority thus conferred, the city council, in the manner prescribed, created such a department, and declared that it should "consist of a chief engineer and thirteen assistant engineers," &c. Ordinances of Boston, ed. 1869, sect. 1.

It was provided that "the chief engineer shall have the sole command at fires over all other engineers and officers and members of the fire department, and other persons who may be present at such fires," &c. Id., sect. 6.

"Whenever it is adjudged at any fire, by any three or more of the engineers present, of whom the chief engineer, if present, shall be one, to be necessary, in order to prevent the spreading of the fire, to pull down or otherwise demolish any building, the same may be done by their joint order." Id., sect. 11.

It appears that at the fire here in question the chief engineer and a number of the assistant engineers were present. Upon that subject there is no controversy.

The case was first tried in the District Court of the United States for that district.

The learned judge who presided at the trial directed the jury

to render a verdict for the defendant, which was accordingly done.

The plaintiff in error excepted, and having embodied in the record all the evidence given on the trial, sued out a writ of error and removed the case to the Circuit Court.

There the judgment of the District Court was affirmed. A further writ of error has brought the case here for review.

It is now a settled rule in the courts of the United States that whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court. Such is the constant practice, and it is a convenient one. It saves time and expense. It gives scientific certainty to the law in its application to the facts and promotes the ends of justice. *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 637; *Improvement Company* v. *Munson*, 14 id. 442; *Pleasants* v. *Fant*, 22 id. 116.

The rule in the English courts is substantially the same. *Ryder* v. *Wombwell*, Law Rep. 4 Ex. 32; *Giblin* v. *McMullin*, Law Rep. 2 P. C. 335. In the latter case it was said: "In every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party introducing it, upon whom the *onus* of proof is imposed."

At the common law every one had the right to destroy real and personal property, in cases of actual necessity, to prevent the spreading of a fire, and there was no responsibility on the part of such destroyer, and no remedy for the owner. In the case of the Prerogative, 12 Rep. 13, it is said: "For the Commonwealth a man shall suffer damage, as for saving a city or town a house shall be plucked down if the next one be on fire; and a thing for the Commonwealth every man may do without being liable to an action." There are many other cases besides that of fire, — some of them involving the destruction of life itself, — where the same rule is applied. "The rights of necessity are a part of the law." *Respublica* v. *Sparhawk*, 1 Dall.

357, 362.   See also *Mouse's Case*, 12 Rep. 63 ; 15 Vin., tit. Necessity, sect. 8 ; 4 T. R. 794 ; 1 Zab. (N. J.) 248 ; 3 id. 591 ; 25 Wend. (N. Y.) 173 ; 2 Den. (N. Y.) 461.

In these cases the common law adopts the principle of the natural law, and finds the right and the justification in the same imperative necessity.   Burlem. 145, sect. 6 ; id. 159, c. 5, sects. 24–29 ; Puffendorf, B. 2, c. 6.

The statute of Massachusetts, as far as it goes, gives as a bounty that which could not have been claimed before.   How far the statute trenches upon the legal and natural right which every one possessed prior to its enactment, is a subject we need not consider.

All the questions arising in this case are questions of local law.   It is our duty to consider the controversy as if we were a court of the State, and sitting there to apply her jurisprudence.

The subject was within her police power, and it was competent for her to legislate upon it as she might deem proper.   It is wholly beyond the sphere of Federal authority.

Whether the statute is to be construed strictly, as being in derogation of the common law, or liberally, as being remedial in its character, are points within the exclusive cognizance of her tribunals.   The jurisdiction of the District Court arose from the 'incidental fact that a claim in behalf of a bankrupt's estate was involved, and that his assignee was the plaintiff.

In order to charge the city, " the remedy being given by statute only, the case must be clearly within the statute." . . . " The city is responsible by force of the statute only, and such responsibility is limited to the cases specially contemplated."   *Taylor* v. *Plymouth*, 8 Metc. (Mass.) 465.

The law of the case has been clearly laid down by the highest judicial court of the State, and we cannot do better than quote it at length.

" The plain intent of the statute is that no house or building shall be demolished unless it shall be judged necessary by three fire-wards, or by the other officers authorized to act in their absence, or where no fire-wards have been appointed.   It is the united judgment of the officers to whom the power is given,

acting upon the immediate exigency, and determining the ne-
cessity, which is contemplated by the statute. Its language is
capable of no other reasonable interpretation. It is a joint
authority expressly given to the officers designated, acting
together, and cannot be exercised by a minority or by any one
of them.

"It is not sufficient, therefore, that a general conclusion or
judgment was arrived at by the three fire-wards or the other
officers mentioned, that it was necessary to destroy some build-
ings in order to put a stop to the further extension of a fire.
They must go further. They must determine upon the par-
ticular house or building which they shall adjudge necessary
to be destroyed for the purpose. This cannot be left to the
individual judgment of any one of the fire-wards." *Ruggles* v.
*Inhabitants of Nantucket*, 11 Cush. (Mass.) 433.

The validity of the ordinance creating the fire department
was not questioned in the argument here, and we see no reason
for doubt upon the subject. The statute which authorized the
ordinance declared that "the engineers or other officers," ap-
pointed pursuant to the provisions of the latter, should be
clothed with all the powers and duties "conferred upon fire-
wards by the Revised Statutes or special acts relating to the
city of Boston now in force," and that the city council might
"make such regulations in regard to their conduct and govern-
ment" as it might see fit to ordain. For all the purposes of
this case the engineers were fire-wards at and during the fire
here in question. Several things were necessary to the validity
of an order for the destruction of the tenement of the bank-
rupt: —

At least three engineers of the fire department — the chief
engineer, if present, being one — must have consulted together
touching the blowing up of that particular building.

They must all have arrived at the conclusion that it was
necessary to destroy it in order to arrest the progress of the
flames.

They must all jointly and specifically have ordered that
building to be destroyed.

Upon looking carefully through the record, we have failed to
find the slightest proof that any three of the fire engineers

ever consulted in relation to destroying the building to which this controversy relates; that any three, jointly or severally, expressly or by implication, gave an order that it should be destroyed; or that this particular building was ever present to the minds of any three of the engineers in that connection.

The mayor was on the ground early after the commencement of the fire, and was there, actively engaged, until the next morning. He heard consultations as to the use of gunpowder, but his testimony is an entire blank as to the points here under consideration.

The chief engineer was called by the plaintiff and was fully examined.

He gave authority to numerous persons according to this formula: —

"Colonel Shepard will blow up buildings or remove goods as his judgment directs.

"J. S. DAMRELL, *Chief Engineer.*"

The utter nullity of such an instrument is too plain to require remark.

In the course of the chief engineer's testimony these questions and answers occur: —

" *Q.* You and the engineers did not direct the blowing up of any buildings in Boston by gunpowder?

" *A.* No, sir. Not when I was present. If any three engineers did so, when I was not present, I have yet to learn the fact.

" *Q.* Did you know that any three engineers directed the demolishing of any building by gunpowder?

" *A.* I do not know the fact."

The building was blown up by General Burt, the postmaster of Boston. He had a written paper from the chief engineer, and it was in his possession when he testified. The document is not in the record, and its contents are not shown. Upon the points here in question his testimony was as follows: —

" *Q.* Did you at any time consult with three of the engineers of the city, after you started the scheme of blowing up?

" *A.* I don't think we did. I had in my mind distinctly what to do, and we stuck to it until we got it done.

" *Q.* You used your own discretion entirely?

" *A.* I intended to. I intended to keep that line plumb up, if I could, and not to let it get into the new post-office building, and not get over into this part of the city."

These witnesses are unimpeached and uncontradicted, and what they say is conclusive. It is unnecessary to refer particularly to the rest of the testimony. Nothing is to be found in it in conflict with the parts we have quoted. It affords no ground for a plausible conjecture that the facts were otherwise. The plaintiff not only failed to prove what he claimed, but his own testimony counter-proved it and established the negative. The proposition was vital to his case.

*Judgment affirmed.*