Rochelle FLATFORD, and J.C. Flatford, personally and as next friends of Brandy Flatford, Samantha Flatford, Sean Flatford, and Katrina Flatford, Plaintiffs,

v.

CITY OF MONROE; City of Monroe Department of Building and Safety; Michael Bosanac, individually and in his official capacity as Director of Building, Zoning and Environmental Development, a/k/a Director of Building and Safety; City of Monroe Police Department; Officers Thomas Moore, David Foley, and Charles Abel, Monroe City Police Officers; One Unknown Female Monroe City Police Officer; and One Unknown Male Monroe City Police Officer, individually and in their official capacities, Defendants.

Civ. A. No. 90–73400.

United States District Court, E.D. Michigan, S.D.

July 8, 1992.

John D. Erdevig, Legal Services of Southeastern Michigan, Monroe, Mich., Douglas R. Mulkoff, Robert F. Gillett, Legal Services of Southeastern Michigan, Ann Arbor, Mich., for plaintiffs.

Arthur G. Behm, Plunkett & Cooney P.C., Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

GADOLA, District Judge.

Defendants filed a motion for summary judgment August 7, 1991. Plaintiffs filed a motion for partial summary judgment August 30, 1991. After plaintiffs' first amended complaint was filed September 9, 1991, the court, in its October 28, 1991 order, dismissed the state law claims and denied without prejudice defendants' motion for summary judgment and plaintiffs' motion for partial summary judgment.

Defendants then filed a motion for summary judgment November 6, 1991; and plaintiffs filed a motion for partial summary judgment November 7, 1991. Plaintiffs responded to defendants' motion November 18, 1991; and defendants responded to plaintiffs' motion December 2, 1991. Plaintiffs filed a reply brief January 16, 1992. Oral argument was heard January 29, 1992.

### BACKGROUND FACTS

On May 25, 1990, police officers from the Monroe City Police Department, pursuant to a search warrant issued in an unrelated matter, entered an apartment building in the City of Monroe. No arrests were made, nor was application made for arrest warrants for any of the occupants. Plaintiffs, a family of six tenants residing in the building, were not the persons being investigated.

The police officers reported unsafe conditions during their search of the building and requested a building inspection. Defendant Bosanac, the director of building,

zoning and environmental development, obtained an administrative inspection warrant from Judge Terrence Bronson and inspected the building the following day, May 26, 1990. Bosanac was accompanied by assistant city attorney Nancy Jackson. They arrived at the building at approximately 3:20 p.m., and after the inspection "[v]arious of defendants ordered certain tenants to vacate by 6:00 p.m. . . . , and asked plaintiffs to try to inform other tenants of the order." First am. compl. at 7.

According to defendants, "[Bosanac and Jackson] observed accumulation of combustible materials throughout the building[,] exposed electrical wiring[,] evidence of illegal 'hot wiring' in some apartments[,] a badly leaking roof[,] rotting masonry and structural beams[,] and inoperable smoke detectors. Additionally, only one stairway served the upper floors, and it was littered with combustible materials." Defendants' mot. at 1. After determining that the building was an unsafe and dangerous structure, the defendant officials then ordered the tenants to evacuate the building under authority of section 203 of Monroe City Ordinance No. 89–018. The only violations noted in Bosanac's report which related specifically to plaintiffs' apartment were as follows: "entrance door damaged," "paneling loose in living room," "bath G.F.I. inoperative, smoke detector inoperative, switch plate missing and improper light in small bedroom," "water closet loose at floor," "replace water closet," "replace tub, uncleanable surface," "provide approved tub faucet," "service heating unit by licensed heating contractor." Defendants' mot. ex. 3; plaintiffs' resp. ex. 2.

Plaintiffs complied with the order to vacate and left the premises May 26, 1990. That night they stayed with a relative, and from May 27 to May 30 they stayed with someone else. They returned to their apartment May 31; however, police officers again told them they had to leave. After numerous contacts by plaintiffs' attorneys to defendant Bosanac, he finally allowed the plaintiffs to return to the apartment June 8, 1990, after a battery operated smoke detector had been installed. Plaintiffs' resp. ex. 3. It is undisputed that there was no prior notice to the occupants, no pre-eviction hearing, no judicial order to vacate, and no post-eviction hearing.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine tri-

able issue. Fed.R.Civ.P. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R.Civ.P. 50(a). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

### ANALYSIS

■ Defendants first claim that "[p]laintiffs, as tenants, lack standing to allege improper notice to the owner of the building at issue or to challenge a discretionary decision of a presumptively competent [c]ity official acting to protect the health and safety of the general public." Defendants' mot. at 3. However, plaintiffs are not attacking any improper notice to the owner of the building. Plaintiffs' complaint clearly arises from the defendants' failure to notify *plaintiffs* before ordering them to vacate their apartment. Defendants accurately quote from *Valley Forge College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1981), that "at an irreducible minimum, Article III requires the party who invokes the court's authority to show he personally suffered some actual or threatened injury as a result of the putatively illegal conduct

of the defendant." In the instant action it was plaintiffs, not the owner of the building, who suffered some actual or threatened injury as a result of defendants' conduct. Thus, the court concludes that plaintiffs do have standing to assert their 42 U.S.C. § 1983 claim.

Before reaching the merits of the claim, the court notes that plaintiffs have agreed to dismiss all claims against two of the named defendants, the Monroe Department of Building and Safety and the Monroe Police Department, as these two departments are not separate legal entities subject to a section 1983 action, but merely arms of defendant City of Monroe.

■ The language of 42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs have alleged that defendants deprived them of their procedural due process rights by evicting them from their home, pursuant to a city ordinance, without notice and an opportunity to be heard. There is no question that plaintiffs, as tenants, were "deprived of a significant interest in property: indeed, of the right to continued residence in their homes." *Greene v. Lindsey,* 456 U.S. 444, 451, 102 S.Ct. 1874, 1878, 72 L.Ed.2d 249 (1982).

In the landmark United States Supreme Court case involving due process rights guaranteed by the fourteenth amendment, the Court held that no intentional state termination or seizure of a property or liberty interest can take place unless the state affords notice and an opportunity to be heard before the deprivation. *Fuentes v. Shevin,* 407 U.S. 67, 80–83, 92 S.Ct. 1983, 1994–1995, 32 L.Ed.2d 556 (1972). In addition, "it is now well settled that a temporary, nonfinal deprivation of property is

nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Id.* at 84–85, 92 S.Ct. at 1996–1997. (citing *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969)).

▮ Although defendants asked plaintiffs how soon they could evacuate the premises, defendants must concede that no prior notice and no formal hearing were afforded plaintiffs before they were evicted by defendant Bosanac. Defendants rely on the portion of the *Fuentes* opinion which identifies situations in which notice provisions may be excused. The Court stated

[t]here are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. [Citation omitted.] These situations, however, must be truly unusual. [Footnote omitted.] Only in a few limited situations has the Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food. [Footnotes omitted.]

*Fuentes*, 407 U.S. at 90–92, 92 S.Ct. at 1999–2000. Thus, any constitutional analysis of state rights to protect its citizens involves weighing the state's interest against the individual's right to due process.

Defendants rely on a Connecticut Supreme Court case, *Gorra Realty, Inc. v. Melvin Jetmore, Jr.*, 200 Conn. 151, 510 A.2d 440 (1986). *Gorra* was a 42 U.S.C.

§ 1983 action which held that a building owner did not have a due process right to prior notice and hearing before a posting of his property as unsafe. The court found "that there was no due process right to a hearing prior to an emergency posting and concluded that emergency posting did not constitute a taking without just compensation." *Id.* at 443. The court further concluded that plaintiffs' claims did not rise to the level of a section 1983 action. *Id.* at 448.

Defendants also rely on *Bowditch v. Boston*, 101 U.S. 16, 25 L.Ed. 980 (1879), in which the Court recognized a constitutional exception to prior notice and a hearing when emergency conditions to prevent fire, flood or disease existed.

The court finds the language of *Fuentes*, *Gorra* and *Bowditch* persuasive to impose liability on defendants, not to exempt them from it. By applying the factors from *Fuentes*, the court finds that first, the seizure was not necessary to secure an important governmental or general public interest. Although it is understood that the defendants do have an important governmental or general public interest in making sure that buildings are safe, defendants have not shown that it was necessary to evacuate the building within a few hours in order to secure those interests. The violations that gave rise to the eviction of the entire building were as follows: "accumulations of combustible materials throughout the building[,] exposed electrical wiring[,] evidence of illegal 'hot wiring' in some apartments[,] a badly leaking roof[,] rotting masonry and structural beams[,] and inoperable smoke detectors. Additionally, only one stairway served the upper floors, and it was littered with combustible materials." Defendants' mot. at 1. Defendants fail to identify the kind and quantity of combustibles, but perhaps they could have been removed from the building. Certainly smoke detectors could be repaired or replaced within a few hours. Defendant Bosanac himself testified that installing a smoke detector was a ten minute job. Bosanac dep. at 65. As previously outlined in this opinion, the violations

which related specifically to plaintiffs' apartment could have been cured without eviction of the tenants. Indeed, plaintiffs were eventually allowed to move back into their apartment after the smoke detector was installed.

Second, there was no special need for very prompt action. Although some of the violations required prompt attention, defendants have failed to specify what danger was so imminent as to require immediate eviction of the tenants.

Third, Bosanac, the person initiating the seizure and the government official responsible for determining that it was necessary and justified in the particular instance, was not operating under the standards of a narrowly drawn statute. Defendants assert authority for the seizure pursuant to Monroe city ordinance no. 89–018, section 203. The ordinance, entitled "Unsafe Buildings or Structures" reads

All buildings or structures regulated by this code which are structurally unsafe or not provided with adequate egress, or which constitute a fire hazard, or are otherwise dangerous to human life are, for the purpose of this section, unsafe.

\* \* \* \* \* \*

The Building and Safety Department *may correct* immediately all buildings or structures which fall within the definition of Dangerous Buildings delineated herein, *without notice*, when the violation or violations constitute an emergency situation and immediate action is required to protect the health and safety of the general public. The cost to the City of alleviating such an emergency situation shall be charged against the owner in the form of a tax lien placed against the property by the City.

Monroe city ordinance no. 89–018, § 203 (emphasis added).

■ This ordinance clearly authorizes the city and its agents to make corrections or repairs without notice after a building is deemed to be unsafe or dangerous. It does not authorize the city to evict occupants, even temporarily, after a building is deemed to be unsafe or dangerous.

Defendants have failed to address section 401 *et seq.* of the same ordinance which specifically provide procedures for removing tenants from dangerous buildings. Section 403(2) reads as follows:

If the building or structure is in such condition as to make it *immediately dangerous* to the life, limb, property or safety of the public or its occupants, is shall be ordered to be vacated.

*Id.* at § 403(2) (emphasis added). Section 401(b)(3)(ii) provides the following:

If the building official has determined that the building or structure must be vacated, the order shall require that the building or structure shall be vacated within a time certain from the date of the order as determined by the building official to be reasonable.

*Id.* at § 401(b)(3)(ii). If the building is in such poor condition that demolition is necessary, the city ordinance sets 60 days as maximum limit for the number of days occupants may remain in the building. "[T]he order shall require that the building be vacated within such time as the building official shall determine is reasonable (not to exceed 60 days from the date of the order)." *Id.* at § 401(b)(3)(iii).

In all cases the notice to vacate "shall ... be posted, in addition to being served as provided in Section 401(c), at or upon each exit of the building," and "[w]henever such notice is posted, the building official shall include a notification thereof in the notice an order issued by him under Subsection (b) of Section 401, reciting the emergency and specifying the conditions which necessitate the posting." *Id.* at § 404.

The court concludes that even if the ordinance were found to be narrowly drawn, the seizure was not necessary and justified in this particular instance as directed by the Court in *Fuentes.*

The Connecticut Supreme Court's decision in *Gorra* is also easily distinguished from the case at bar. In *Gorra* "[n]o tenants were shown to have vacated the premises because of the posting, and the [owner] suffered no loss of rental thereby." *Gorra,* 510 A.2d at 442. The court found that mere "posting" of the building as un-

safe did not rise to the level of a section 1983 violation. In the instant action plaintiffs were deprived of their home for twelve days.

Finally, defendants, relying on *Bowditch v. Boston,* 101 U.S. 16, 25 L.Ed. 980 (1879), contend that the eviction was proper because there existed an emergency condition to prevent fire. In *Bowditch,* however, a fire broke out in Boston; and city officials demolished an adjacent building to prevent the fire from spreading. Although there was may have been some risk of future fire to plaintiffs' apartment, there certainly was no fire in progress. Thus, defendants' reliance on *Bowditch* is entirely misplaced.

Accordingly, the court finds that defendants evicted plaintiffs from their home without prior notice and an opportunity to be heard in violation of their due process rights. In addition, defendants have failed to establish that there existed any "extraordinary situations" that would justify even postponing notice and opportunity for a hearing. *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999. There being no genuine issues of material fact, plaintiffs' motion for partial summary judgment on the issue of liability must be granted.

■ Once the court has determined the issue of liability, it must determine who is liable for the unconstitutional deprivation. The City of Monroe, Bosanac, and several police officers have all been named as defendants. Bosanac and the officers are being sued both as individuals and in their official capacities. As long as the government entity receives notice and an opportunity to respond, as the City of Monroe has in the instant case, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985).

■ The City of Monroe contends that it is immune from suit pursuant to Michigan law, Mich.Comp.Laws Ann. § 691.1407. However, the Supreme Court in *Howlett v. Rose,* 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), held that when a section 1983 claim is asserted in either state or federal court, the immunity defenses are

matters of federal law. State law, therefore, cannot immunize a defendant that is subject to section 1983 liability under federal standards.

■ The City of Monroe also contends that it is not liable in this section 1983 action because plaintiffs have failed to plead and prove the existence of a policy or custom which has deprived plaintiffs of a constitutionally protected right. In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court found that a policy or custom of inadequately training a city's police force cannot be inferred from a single, isolated incident of police misconduct. The City of Monroe interprets *Tuttle* to preclude its liability because plaintiffs have not shown other instances in which this policy was enforced.

However, the City of Monroe has consistently maintained that it acted in accordance with its official municipal policy in temporarily evicting plaintiffs. Under *Monell,* plaintiffs have properly pleaded a section 1983 action against the City of Monroe.

■ The City of Monroe also contends that plaintiffs must show gross negligence on the part of the city and its officials.

> First, mere negligence ... is insufficient; the failure must be so gross in nature that future misconduct is substantially certain to result. Second, even when gross negligence is demonstrated, the causal connection must be established between the [deprivation] ... and the specific wrongdoing which injured the Plaintiff.

*Tompkins v. Frost,* 655 F.Supp. 468, 470 (E.D.Mich.1987). In the instant case defendant Bosanac has maintained that if he had it to do all over again, he would act in the exact same manner. Bosanac dep. at 32. Thus, future misconduct is substantially certain to result when the City of Monroe acts pursuant to its ordinance.

■ Defendants Bosanac and the police officers claim immunity based on the Supreme Court's decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982). The Court found that "[where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Id.* at 819, 102 S.Ct. at 2738. The court finds that in the instant action, the building inspector could be expected to know that ordering tenants to vacate their apartment on two and one-half hours' notice could violate the tenants' constitutional rights. The building inspector even took the city attorney with him to inspect the apartment. Clearly, the person charged with the authority to put people out of their homes could be expected to be well-versed in the rights of those whom he evicts.

Likewise, the City of Monroe police officers could be expected to know that tenants could not be ordered out of their homes because of non-emergency building violations such as those in the case at bar. Thus, the court finds that neither the building inspector nor the police officers are entitled to qualified immunity in the instant action.

## CONCLUSION

There can be no question that plaintiffs were evicted from their home for building code violations without constitutionally guaranteed notice and opportunity to be heard. In addition, defendants cannot substantiate their claim that extraordinary circumstances existed to waive those requirements.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendants' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment on the issue liability of due process violations is GRANTED.