TRINCO INVESTMENT COMPANY, and Kathleen G. Rose, Trustee of the V & M Rose—Marital Trust, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 11–857L.

United States Court of Federal Claims.

July 16, 2012.

Wesley R. Higbie, Law Office of Higbie Law Offices, San Mateo, CA, attorney of record for plaintiff.

Jessica Michelle Held, U.S. Department of Justice, Environmental and Natural Resources Division, Washington, D.C., with whom was Assistant Attorney General Ignacia S. Moreno, for defendant.

## OPINION AND ORDER

FUTEY, Judge.

Plaintiffs, TrinCo Investment Company ("TrinCo") and Kathleen G. Rose, filed suit in the Court of Federal Claims on December 7, 2011. They allege that the government took their property when the United States Forest Service ("the Forest Service") intentionally lit fires in order to manage a group of wildfires in the summer of 2008. Defendant moved to dismiss for failure to state a claim on March 7, 2012. Plaintiffs filed a response on April 6, 2012, and defendant filed a reply on April 23, 2012.

### I. Background

Plaintiffs own five pieces of real property in California. TrinCo, a California limited partnership, owns four pieces of property: the Squaw Camp Property, the Price Creek Property, the Mud Springs Property, and the Eltapom Rose Property. All of these lands are located in Trinity County, California, all consist of between 524 and 714 timbered acres, and all are "completely surrounded" by the Shasta–Trinity National Forest. Compl. 3–4. Kathleen G. Rose is a trustee of the "V & M Rose Trust—Marital Trust" ("Rose Trust"). The Rose Trust owns the V & M Bottoms Property, which is also in Trinity County, contains 57 timbered acres, and is adjacent to the Shasta–Trinity National Forest.

In late June 2008, wildfires began to burn in the Shasta–Trinity National Forest. The

Forest Service named this series of fires the "Iron Complex" incident and began to manage them jointly on approximately June 21, 2008. According to the complaint, one of the objectives of this management was "the reduction of fuel buildup on national forest lands which had accumulated under the Forest Service's historical fire abatement policy." *Id.* at 5. To reduce that fuel—unburned timber—the Forest Service lit a number of fires on or adjacent to plaintiffs' properties.

These intentionally lit fires caused damage to plaintiffs' properties. Depending on the piece of real property, anywhere from 44 to 714 acres of "merchantable timber, reproduction and associated vegetation" were burned.[1] Plaintiffs allege that the Iron Complex wildfires would not have damaged their lands but for the Forest Service's actions. They therefore assert that defendant took their property by setting the fires, and ask for damages that amount to $6,452,435.

## II. *Analysis*

Defendant has moved to dismiss under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for "failure to state a claim upon which relief can be granted." Defendant asserts that the intentional lighting of fires by the government in order to manage a series of wildfires does not constitute a compensable taking.

### A. *Standard of Review and Takings Overview*

Dismissal under RCFC 12(b)(6) is proper "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir.2002). In order to avoid dismissal, a plaintiff must have alleged "enough facts to

state a claim to relief that is plausible on its face," and the pleadings must contain enough to detail to nudge the claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility when the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[2] In considering a motion to dismiss under RCFC 12(b)(6), a court accepts "all well-pleaded factual allegations as true and draws all reasonable inferences in the claimant's favor." *Lindsay*, 295 F.3d at 1257.

The Fifth Amendment to the Constitution bars private property from being "taken for public use, without just compensation." U.S. CONST. amend. V. The clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 314, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The most typical type of taking requiring compensation "is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). In this case, plaintiffs have alleged a physical taking of various property located on their five parcels of real property.

Defendant raises two arguments in support of its motion to dismiss. First, defendant argues that the government may, in certain instances, act to prevent greater harm, without generating Fifth Amendment liability.[3] Second, defendant argues that any

---

1. The exact totals are as follows: 714 acres of Squaw Camp on or about July 1; 92 acres of Eltapom Rose on or about July 19; 395.1 acres of Mud Springs on or about July 23 and August 11; 57 acres of V & M Bottoms on or about July 28; and 524.3 acres of Price Creek on or about August 7.

2. Plaintiffs have argued that their claim merely must be "non-frivolous" to survive a motion to dismiss, and have cited a case involving the jurisdiction of the Court of Federal Claims. Pls.' Opp'n Mot. Dismiss 13 (citing *Jan's Helicopter*

*Serv., Inc. v. Federal Aviation Administration*, 525 F.3d 1299, 1309 (Fed.Cir.2008)). The cited standard applies to motions to dismiss for lack of subject matter jurisdiction, and is thus irrelevant to this case.

3. Defendant refers to actions taken pursuant to the government's "police power." The federal government, unlike the states, has no general "police power." *See, e.g., Nat'l Fed. of Indep. Bus. v. Sebelius*, —— U.S. ——, 132 S.Ct. 2566, 2578, 183 L.Ed.2d 450 (2012) ("Our cases refer to this general power of governing, possessed by

interference with plaintiffs' property rights was so temporary as to not constitute a taking.

## B. *Background Principles of Law Limit the Right to Compensation*

Defendant first argues that the Forest Service intentionally lit fires in order to manage the Iron Complex wildfires, and that this intentional lighting was an exercise of the police power. Thus, defendant asserts that there can be no Fifth Amendment liability, since actions taken pursuant to the police power do not constitute takings. In response, plaintiffs have argued that defendant has pled a defense of "actual necessity," which requires "Purpose, Need, Immediacy, and Protection of Special Value." Pls.' Opp. Mot. Dismiss 8. Plaintiffs appear to have based this test on a state interpretation of a state statute mentioned by the Supreme Court in *Bowditch v. Boston*, 101 U.S. 16, 19–20, 25 L.Ed. 980 (1879), but neither that case nor any other case contains the purported four-part test.

■ Although property owners generally have a right to compensation when the government unduly interferes with their property, this right to compensation is limited by "background principles" of law. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In *Lucas*, the Supreme Court discussed these "background principles" in light of a state's police power and the law of nuisance. *Id.* at 1023–24, 112 S.Ct. 2886. There, the Court noted that "the government may, consistent with the Takings Clause, affect property values by regulation without incurring an obligation to compensate" when it acts "with respect to the full scope of the State's police

power." *Id.; see also Bair v. United States*, 515 F.3d 1323, 1327 (Fed.Cir.2008) ("The Supreme Court in *Lucas* made clear that property interests are acquired subject to 'background principles' of law, and that limitations on property rights that otherwise would effect a categorical taking are permissible if they 'inhere in the title itself.' ") (citing *Lucas*, 505 U.S. at 1029, 112 S.Ct. 2886).

■ The Court in *Lucas* also recognized that "background principles" limiting the right to compensation include a government's actions taken to stop a fire from spreading. *Id.* at 1029 n. 16, 112 S.Ct. 2886. The Court explained that for categorical takings, compensation is normally due, except in certain instances, such as actions taken "to abate nuisances that affect the public generally, or otherwise." *Id.* at 1028, 112 S.Ct. 2886. In a footnote, the Court elaborated on the meaning of "otherwise":

> The principal "otherwise" that we have in mind is litigation absolving the State (or private parties) of liability for the destruction of "real and personal property, in cases of actual necessity, to prevent the spreading of a fire" or to forestall other grave threats to the lives and property of others. *Bowditch v. Boston*, 101 U.S. 16, 18–19, 25 L.Ed. 980 (1880); *see United States v. Pacific R., Co.*, 120 U.S. 227, 238–39, 7 S.Ct. 490, 495–96, 30 L.Ed. 634 (1887).

*Id.* at 1029 n. 16, 112 S.Ct. 2886. The Court then stated that "the Takings Clause does not require compensation when an owner is barred from putting land to a use that is proscribed by those 'existing rules or understandings' " of law. *Id.* at 1030, 112 S.Ct. 2886; *see also Lingle*, 544 U.S. 528, 538, 125 S.Ct. 2074 (2005) (noting that no compensa-

the States but not by the Federal Government, as the 'police power.' "); *United States v. Morrison*, 529 U.S. 598, 618, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (referencing "the police power, which the Founders denied the National Government and reposed in the States"). As used in this case, "police power ... refer[s] to the power of the federal government to engage in activities not unlike those engaged in by the states under their inherent sovereign powers, recognizing that the power in the federal system is of Constitutional origin." *Fla. Rock Indus., Inc. v. United States*, 18 F.3d 1560, 1568 n. 17 (Fed.Cir.1994); *see also*

*Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1192 n. 10 (Fed.Cir.2004) (noting that "[t]he government's Commerce Clause powers are, of course, the source of the regulatory authority" and that "the federal government has no inherent police power") (internal citations removed). Furthermore, the Supreme Court has "repeatedly observed that '[t]he power over the public land thus entrusted to Congress is without limitations.' " *Kleppe v. New Mexico*, 426 U.S. 529, 539, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976) (quoting *United States v. San Francisco*, 310 U.S. 16, 29, 60 S.Ct. 749, 84 L.Ed. 1050 (1940)).

tion would be due when " 'background principles of nuisance and property law' independently restrict the owner's intended use of the property").

The recognition that no compensation is due when a government acts to stop a fire from spreading is not new. The *Lucas* Court cited to *Bowditch v. Boston,* a case from 1879 that recognized that "[a]t the common law every one had the right to destroy real and personal property, in cases of actual necessity, to prevent the spreading of a fire, and there was no responsibility on the part of the destroyer, and no remedy for the owner." *Bowditch,* 101 U.S. at 18–19. The Court has repeated this point over the years, noting for instance that "[t]o prevent the spreading of a fire, property may be destroyed without compensation to the owner." *Omnia Commercial Co. v. United States,* 261 U.S. 502, 508, 43 S.Ct. 437, 67 L.Ed. 773 (1923); *see also United States v. Caltex,* 344 U.S. 149, 154, 73 S.Ct. 200, 97 L.Ed. 157 (1952) ("[T]he common law had long recognized that in times of imminent peril—such as when fire threatened a whole community—the sovereign could, with immunity, destroy the property of a few that the property of many and the lives of many more could be saved."); *Ralli v. Troop,* 157 U.S. 386, 405, 15 S.Ct. 657, 39 L.Ed. 742 (1895) ("By our law, indeed, either public officers or private persons may raze houses to prevent the spreading of a conflagration. But this right rests on public necessity, and no one is bound to compensate for or to contribute to the loss, unless the town or neighborhood is made liable by express statute.").

Plaintiff has argued that *Bowditch* and its discussion of natural law are inapplicable to modern takings law. *See* Pls.' Opp'n Mot. Dismiss 8 (calling *Bowditch* a "hoary old case with [ ] now arcane citations" and a product of "natural law" and not of "contemporary legal doctrines of sovereign immunity or constitutional takings"). The Supreme Court, however, in *Lucas* in 1992 and *Lingle* in 2005 reiterated the importance of "background principles" of law and even explicitly cited *Bowditch* 's discussion of fire prevention. *Lucas,* 505 U.S. at 1029 n. 16, 112 S.Ct. 2886 (citing *Bowditch* ); *Lingle,* 544 U.S. at 528, 125 S.Ct. 2074. This Court must follow Su-

preme Court precedent. The government is not liable for the destruction of property when it acts "[t]o prevent the spreading of a fire." *Omnia Commercial,* 261 U.S. at 508, 43 S.Ct. 437.

### C. *Plaintiffs Have Not Pled a Facially Plausible Claim*

To survive defendant's motion to dismiss, plaintiffs must have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937. In this case, plaintiffs have failed to meet that burden.

■ In the complaint, plaintiffs allege that there was damage to timber and vegetation on five properties that "resulted from fires intentionally lit by the Forest Service ... on or near plaintiffs' property." Compl. 2. These five properties are either "completely surrounded" or "adjacent to" the Shasta–Trinity National Forest. *Id.* at 3–4. Following the spread of the Iron Complex wildfires, the complaint alleges that the Forest Service "intentionally lit" fires "[a]s part of its fire management of the Iron Complex" series of wildfires. *Id.* at 5. The complaint also notes that "[o]ne of the Forest Service's management objectives" for this forest was a "reduction of fuel buildup on national forest lands." *Id.* According to the complaint, the intentionally lit fires "resulted in significant foreseeable damage" and "[b]ut for this action by the government, the subject lands and timber would not have been damaged by the existing wildfires." *Id.* at 7–11. The Forest Service intentionally lit these fires "in furtherance of a public purpose, to wit, the management of the Shasta–Trinity National Forest." *Id.*

As discussed above, the government is not liable when it destroys property "[t]o prevent the spreading of a fire." *Omnia Commercial,* 261 U.S. at 508, 43 S.Ct. 437. Here, plaintiffs have not pled enough facts to show that the government's actions were not taken as part of the firefighting related to the Iron Complex fires. The complaint simply states, "As part of its fire management of the Iron Complex, the Forest Service intentionally lit many fires, several of which burned the

properties described in [the complaint]." Compl. 5. In their response, plaintiffs argue that the complaint also establishes a second purpose for the Forest Service's actions by alleging that one of the Forest Service's "management objectives" at that time was a general "reduction of fuel buildup on national lands." *Id.* Although the complaint alleges this, it never alleges that the Forest Service intentionally lit a fire for any purpose other than to be "part of its fire management of the Iron Complex" wildfires. *Id.* Furthermore, a reduction of fuel buildup on land adjacent to or surrounded by a forest engulfed in a wildfire is fully consistent with the Forest Service acting to manage the wildfire incident.

Plaintiffs have pled no facts from which the Court could plausibly conclude that the intentional lighting of fires was not part of the Forest Service's firefighting. Since the government is not required to compensate plaintiffs for property destroyed when the government acts "[t]o prevent the spreading of a fire," plaintiffs have not stated a claim for which relief can be granted. *Omnia Commercial,* 261 U.S. at 508, 43 S.Ct. 437.[4]

### III. *Conclusion*

For the above-mentioned reasons, defendant's Motion To Dismiss pursuant to RCFC 12(b)(6) is GRANTED. The Clerk is directed to act accordingly.

No costs.

IT IS SO ORDERED.

---

4. Since the Court holds that the government is not liable for property destroyed as part of its management of the Iron Complex wildfires, it is unnecessary to reach the government's argument that any interference with plaintiffs' property was too temporary to constitute a taking.