# SUPREME COURT OF THE UNITED STATES

## VICKI BAKER *v.* CITY OF MCKINNEY, TEXAS

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 23–1363.   Decided November 25, 2024

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR, with whom JUSTICE GORSUCH joins, respecting the denial of certiorari.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." This case raises an important question that has divided the courts of appeals: whether the Takings Clause requires compensation when the government damages private property pursuant to its police power.

On July 25, 2020, in McKinney, Texas, a fugitive named Wesley Little kidnapped a 15-year-old girl. After evading the police in a high-speed car chase, Little found his way to petitioner Vicki Baker's home with his victim in tow. Little was familiar with the home because he had previously worked there as a handyman. Baker had recently retired and moved to Montana, so her daughter Deanna Cook was at the house that day, preparing to put it up for sale. When Cook answered the door, she recognized Little and the child with him: Earlier that day, Cook saw on Facebook that Little was on the run with a teenage girl. Cook feigned ignorance and let them into the house, but told Little, falsely, that she had to go to the supermarket. Once outside, Cook called Baker, who called the police.

McKinney police arrived soon after and set up a perimeter around Baker's home. Eventually, Little released the girl and she exited the house. The girl told the police that Little was hiding in the attic, that he was armed, and that

he was high on methamphetamine. Later, while still in the attic, Little told the police that he was not going back to prison, that he knew he was going to die, and that he planned to shoot it out with the police. To resolve the stand-off and protect the surrounding community, the police tried to draw Little out by launching dozens of tear gas grenades into the home. When that did not work, the officers deto-nated explosives to break down the front and garage doors and used a tank-like vehicle to bulldoze the home's back-yard fence. By the time the officers gained entry, Little had taken his own life. All agree that the McKinney police acted properly that day and that their actions were necessary to prevent harm to themselves and the public.

The actions of the police also caused extensive damage to Baker's home and personal belongings, however. As the District Court explained:

"'The explosions left Baker's dog permanently blind and deaf. The toxic gas that permeated the House re-quired the services of a HAZMAT remediation team. Appliances and fabrics were irreparable. Ceiling fans, plumbing, floors (hard surfaces as well as carpet), and bricks needed to be replaced—in addition to the win-dows, blinds, fence, front door, and garage door. Essen-tially all of the personal property in the House was de-stroyed, including an antique doll collection left to Baker by her mother.'"

84 F. 4th 378, 380–381 (CA5 2023). In total, the damage amounted to approximately $50,000. *Id.*, at 381. Baker's insurance refused to cover any damage caused by the McKinney police.* Baker, who bore no responsibility for

—————

*Homeowners' insurance policies generally do not provide coverage for damage caused by the government. See 10A., J. Plitt, D. Maldonado, & J. Rogers, Couch on Insurance §152:22 (3d ed. Supp. 2024) (explaining that "losses [that] occur because of the actions of a civil authority func-tioning in its ordinary governing capacity" are "typically excluded from

what had occurred at her home, then filed a claim for property damage with the city. The city denied the claim in its entirety. Baker thereafter sued the city, alleging a violation of the Takings Clause. At the summary judgment stage, the District Court held that the City's destruction of Baker's property was a compensable taking under the Fifth Amendment. *Baker* v. *McKinney*, 601 F. Supp. 3d 124, 144 (E. D. Tex. 2022). Following trial, a jury awarded Baker nearly $60,000 in damages.

On appeal, the Fifth Circuit reversed. The court declined to adopt the city's broad assertion that the Takings Clause never requires compensation when a government agent destroys property pursuant to its police power. Such a broad categorical rule, the Fifth Circuit reasoned, was at odds with its own precedent and this Court's Takings Clause jurisprudence. *Baker*, 84 F. 4th, at 383–384. Instead, the Fifth Circuit adopted a narrower rule that it understood to be compelled by history and precedent: The Takings Clause does not require compensation for damaged property when it was "objectively necessary" for officers to damage the property in an active emergency to prevent imminent harm to persons. *Id.*, at 385–388. Because the parties agreed that the McKinney police's actions were objectively necessary, the Fifth Circuit concluded that Baker was not entitled to compensation. *Id.*, at 388. Baker now petitions for certiorari and asks this Court to reverse the Fifth Circuit's judgment.

The Court's denial of certiorari expresses no view on the merits of the decision below. I write separately to emphasize that petitioner raises a serious question: whether the Takings Clause permits the government to destroy private property without paying just compensation, as long as the government had no choice but to do so. Had McKinney

———————
most property insurance policies").

razed Baker's home to build a public park, Baker undoubtedly would be entitled to compensation. Here, the McKinney police destroyed Baker's home for a different public benefit: to protect local residents and themselves from an armed and dangerous individual. Under the Fifth Circuit's decision, Baker alone must bear the cost of that public benefit.

The text of the Takings Clause states that private property may not "be taken for public use, without just compensation." The Takings Clause was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong* v. *United States*, 364 U. S. 40, 49 (1960). This Court has yet to squarely address whether the government can, pursuant to its police power, require some individuals to bear such a public burden.

This Court's precedents suggest that there may be, at a minimum, a necessity exception to the Takings Clause when the destruction of property is inevitable. Consider *Bowditch* v. *Boston*, 101 U. S. 16 (1879), in which the Court held that a building owner was not entitled to compensation after firefighters destroyed his building to stop a fire from spreading. *Id.*, at 18 ("At the common law every one had the right to destroy real and personal property, in cases of actual necessity, to prevent the spreading of a fire, and there was no responsibility on the part of such destroyer, and no remedy for the owner"). *Bowditch* interpreted Massachusetts state law, but subsequent cases have relied on *Bowditch* in the Takings Clause context. Similarly, in *United States* v. *Caltex (Philippines), Inc.*, 344 U. S. 149 (1952), this Court held that the Takings Clause did not require the Government to pay compensation for its destruction of oil companies' terminal facilities amid a military invasion. The destruction of that property during wartime was necessary, the Court explained, "to prevent the enemy from realizing any strategic value from an area which he

was soon to capture." *Id*., at 155. That holding accorded with the common-law principle "that in times of imminent peril—such as when fire threatened a whole community— the sovereign could, with immunity, destroy the property of a few that the property of many and the lives of many more could be saved." *Id*., at 154. These cases do not resolve Baker's claim, however, because the destruction of her property was necessary, but not inevitable. Whether the inevitable-destruction cases should extend to this distinct context remains an open question.

Only a few Courts of Appeals have weighed in on the extent to which the Takings Clause applies to exercises of the police power. Unlike the Fifth Circuit, the Seventh Circuit and Federal Circuit have held that "the Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Johnson* v. *Manitowoc County*, 635 F. 3d 331, 336 (CA7 2011); *AmeriSource Corp.* v. *United States*, 525 F. 3d 1149, 1154 (CA Fed 2008). The Sixth Circuit rejected a takings claim similar to the one here, without addressing any purported exceptions to the Takings Clause, because the plaintiffs "failed to identify any history or precedent establishing that the police have 'taken' their 'property' within the meaning of the Fifth Amendment when the police damaged the property while conducting a lawful arrest." *Slaybaugh* v. *Rutherford County*, 114 F. 4th 593, 603 (2024); see also *Lech* v. *Jackson*, 791 Fed. Appx. 711, 717 (CA10 2019) ("[W]hen the state acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause"). The Fourth Circuit, meanwhile, has held "[t]hat Government actions taken pursuant to the police power are not per se exempt from the Takings Clause." *Yawn* v. *Dorchester County*, 1 F. 4th 191, 195 (2021). All those decisions, save

the Sixth Circuit's, however, predate the Fifth Circuit's determination that there is an "objectively necessary" exception to the Takings Clause.  Whether any such exception exists (and how the Takings Clause applies when the government destroys property pursuant to its police power) is an important and complex question that would benefit from further percolation in the lower courts prior to this Court's intervention.